FILED
2021 Jul-30  PM 11:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| VINCENT L. WITT | ) |
| BRENDA WITT | ) |
| TAREYA WITT | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | )  **CIVIL ACTION NO:** |
| | ) |
| THE TOWN OF BROOKSIDE | )  **2:21-cv-00773-AKK** |
| | ) |
| ALABAMA; OFFICER MARCUS | ) |
| SELLERS; OFFICER JAMES | ) |
| SEBASTIAN "BO" SAVELLE; and former | ) |
| CHIEF MIKE JONES, individually. | ) |
| | ) |
| | )  **JURY DEMAND** |
| | ) |
| **Defendants.** | ) |
| | ) |

## COMPLAINT

COMES NOW, Plaintiffs, Vincent L. Witt, Brenda Witt, and Tareya Witt, pursuant to Rule 15(a)(1)(B) who allege the following facts, asserts the following causes of action, and seeks to recover the following damages against The Town of Brookside Alabama, police officer Sellers, police officer Savelle, and Chief Jones.

### JURISIDCTION

1. This Court has subject matter jurisdiction over Counts I, II, V, VI, XII, XIII, XIV, and XV pursuant to 28 U.S.C. § 1331 because each alleges violations of the United States Constitution and 42 U.S.C. § 1983. These actions are civil rights actions brought under 42 U.S.C. §§ 1983 and 1988. This Court has supplemental federal jurisdiction pursuant to 28 U.S.C. 1367(a) over Counts III, IV, VII, VIII, IX, X, and XI, which assert any applicable pendent state law claims.

2. Venue is proper in this division and district under 28 U.S.C. 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this division and district.

## PARTIES

3. Plaintiff, Vincent Witt ("Pastor Witt), an individual, is a citizen and resident of Jefferson County, Alabama, and is over 19 years of age.

4. Pastor Witt serves as a respected pastor in his community. He also serves as one of the directors of the National Baptist Convention where he mentors thousands of other young pastors. Pastor Witt also serves as Chaplain of the City of Lipscomb.

5. Plaintiff, Brenda Witt ("Mrs. Witt"), an individual, is a citizen and resident of Jefferson County. Mrs. Witt is the wife of Pastor Witt.

6. Plaintiff, Tareya Witt ("Ms. Witt"), an individual, is a citizen and resident of St. Clair County. Ms. Witt is the sister of Pastor Witt.

7. Defendant, Officer Marcus Sellers ("Sellers"), an individual, is or was at all times relevant a police officer employed by the town of Brookside and is over 19 years old.

8. Defendant, Officer James Sebastian "Bo" Savelle ("Savelle"), an individual, is or was at all times relevant a police officer employed by the town of Brookside and is over 19 years old.

9. Defendant, Chief Mike Jones ("Jones"), was at all times relevant the chief of police of Brookside and is over 19 years old.

10. Defendant, The Town of Brookside ("Brookside"), is a municipal corporation located within the Birmingham Division of Jefferson County, Alabama which employed Officers Sellers and Savelle and Chief Jones who were working in

the line and scope of their employment with the City of Brookside, Alabama at the time of the incidents described below.

11. The defendants were at all times legal persons or entitles within the state of Alabama. They were state actors during the course of this incident. Plaintiffs' causes of action are being asserted against Sellers, Savelle, and Jones in their individual capacities.

## FACTS OF THE CASE

12. On June 12, 2019 at approximately 6:00 PM, Pastor Witt was stopped by Defendant Sellers from the Brookwood Police Department for having a paper tag on his new black Cadillac vehicle, which he had purchased roughly a week prior.

13. The stop occurred as Pastor Witt was exiting I-22 westbound on Exit 91 en route to Forestdale, outside of Brookside's municipal jurisdiction but within its police jurisdiction.

14. Brookside's police department has a regular custom, policy, and practice of stopping motorists on this section of I-22 on pretextual or disallowable bases in order to make money from motorists who may have neither the time nor the money to fight an improper ticket in court. This includes unauthorized stops for left lane driving purporting to be under the authority of Ala. Code § 32-5-77 as well as stops for alleged speeding violations outside of the city's municipal jurisdiction which the city is barred from making under Ala. Code § 32-5A-171(9).

15. Pastor Witt was accompanied in the vehicle by his wife, Mrs. Witt. His sister, Ms. Witt, was not in the vehicle.

16. Sellers told Pastor Witt that he had stopped him "because I felt like it" and because his car had a paper tag.

17. Sellers pulled over Pastor Witt's vehicle and conducted a seizure outside of his jurisdiction, doing so without the proper authority and without any reasonable suspicion or probable cause.

18. At no point during this interaction did Pastor Witt claim to be a police officer.

19. Sellers issued no ticket or citation, but only proceeded to degrade and harass Pastor Witt by telling him to "Stay out of Brookside, f***ing n***er".

20. Due to Sellers' egregious acts, Pastor Witt contacted the Brookside Police Department on June 13, 2019, to complain about the unjustified traffic stop and racial slur and spoke to an unknown officer.

21. On June 14, 2019, Pastor Witt received a call from Savelle about the matter. Savelle asked for "Officer Witt," to which Pastor Witt informed him that he was not an officer but the chaplain for the city of Lipscomb.

22. During one of the above phone calls, Pastor Witt was told that the traffic stop was made because there had been a report of a stolen car fitting the description of the car driven by Pastor Witt.

23. After Witt's complaint and to his shock and dismay, a warrant was issued for his and his sister's arrest.

24. Pastor Witt and Ms. Witt were both charged with a Class C Felony of impersonating a peace officer despite the fact such a charge was feasibly impossible for both individuals: there was no felony arrest of Pastor Witt or even a citation issued during the unlawful stop, and his sister was not even present during the unlawful stop.

25.  Pastor Witt and his sister's photographs were posted on Crime Stoppers as well as the Brookside Police Department's Facebook page sometime on or prior to June 16, 2019, and their reputations were defamed by the following statements, which Defendants knew were unfounded but caused to be published:

   a.  "Vincent Lamar Witt is wanted in JEFFERSON COUNTY on a felony warrant charging him with impersonating a police officer."

   b.  "Tareya Dennise Witt is wanted in JEFFERSON COUNTY on a felony warrant charging her with impersonating a police officer."

26. Pastor Witt's was unaware of the false charges until a member of Pastor Witt's church congregation showed him the Crime Stoppers image on Sunday, June 16.

27. Ms. Witt immediately contacted Jefferson County Sheriff Mark Pettway through a third party..

28. Sherriff Pettway immediately had Ms. Witt's picture removed from Crime Stoppers as she was not even in the vehicle during the seizure; nevertheless, Ms. Witt, who works for the federal government, had to inform her job managers of the false accusations, and she suffered anxiety over the uncertainty of whether she would in fact be arrested.  She was unable to be at ease either at her home or while driving in the car, constantly feeling anxiety over whether she would be arrested due to this unfounded allegation.

29. Pastor Witt also received a Facebook message from the Brookside Police Department's Facebook page telling him that he "made public false claims of racism which is illegal," that he had "been charged appropriately and [he would] have [his] day in court," that he would be "held accountable" for "slander[ing] false claims," and that he needed to "exercise racism from [his] life."

30. Ms. Witt contacted the Brookside Police Department and was told to come to the station where she could sign an affidavit saying that her name had been falsely used by either Pastor Witt or Mrs. Witt during the arrest. Ms. Witt knew this to be untrue and believed that this was a ploy to get her to come to the police station to be arrested, and so she did not do so.

31. Sheriff Pettway was also eventually able to have Pastor Witt's picture removed from Crime Stoppers and Facebook and the warrant dropped, as well as the warrant dropped for Ms. Witt.

32. Pastor Witt similarly suffered shame, embarrassment, and humiliation of having his reputation subjected to false accusations. Pastor Witt, whose occupation naturally requires maintaining a good reputation in the community, had his present position compromised when his parishioners learned of the chargers on Crime Stoppers.

33. Further, Pastor Witt's opportunity to advance his career and join another church with a larger congregation was rescinded due the to the defamation suffered. If not for the unfounded allegations, Pastor Witt would have received an offer of employment from this church.

34. The alleged criminal investigation of Pastor Witt and Ms. Witt eventually ended in their favor as they were told that their warrants were eventually dismissed after a subsequent meeting with Sherriff Pettway. Nonetheless, plaintiffs suffer pain, embarrassment, and humiliation due to the unfounded felony charges in violation of their constitutional and civil rights.

**COUNT I: VIOLATION OF THE 4th AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983**

## PASTOR WITT AGAINST DEFENDANTS BROOKSIDE AND SELLERS

35. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

36. This cause of action is brought against the Town of Brookside and against Defendant Sellers pursuant to 42 U.S.C. § 1983, Pastor Witt's Fourth Amendment right to protection against unreasonable searches and seizures, and 42 U.S.C. 1988.

37. Pastor Witt is entitled to recover for the traffic stop because it constituted an unconstitutional seizure under 42 U.S.C § 1983. Recovery under § 1983 requires two elements: that the challenged conduct was done under color of state law, and that it constitutes a deprivation of the plaintiffs' rights, privileges, or immunities.

38. Sellers was employed by the Brookside police force and working within the scope of his employment. The stop clearly occurred under color of state law.

39. The stop deprived Pastor Witt of his constitutionally guaranteed Fourth Amendment right to be protected against unreasonable searches and seizures, because Sellers stopped his vehicle without reasonable suspicion or cause.

40. Sellers did not have the objective, reasonable suspicion of criminal activity as required by *Terry v. Ohio* to justify a traffic stop and thus a Fourth Amendment seizure. United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).

41. There was no probable cause or reasonable suspicion for Sellers' traffic stop of Pastor Witt. Pastor Witt violated no traffic law or ordinance and was displaying temporary tags on his new vehicle as required by state law. Plaintiffs challenge the pretextual reason given for the stop that there was a report of a stolen vehicle.

42. The unconstitutional stop was willful and malicious. Sellers provided no evidence of any traffic violation whatsoever to seize Pastor Witt's vehicle and person, and there was no probable cause that a crime had been committed as evidenced by the fact that Sellers failed to issue so much as a citation. Further, Sellers' use of a racial epithet and the command to "stay out" of Brookside indicate a malicious hostility toward Pastor Witt.

43. Brookside is liable as a municipality under § 1983 and *Monell* (436 U.S. 658, 1978) because it has a demonstrated practice and an official policy by which officers are stationed on or near I-22, outside of Brookside's municipal jurisdiction, to pursue alleged traffic violations that they are not authorized to pursue. This traffic stop likely would not have occurred if not for that practice. ("Drivers question tickets written on and near I-22 by local police department," https://abc3340.com/news/abc-3340-news-iteam/drivers-question-tickets-on-and-near-i-22-issued-by-local-police-department). Brookside is also liable due to a deliberately indifferent failure to train its officers to respect citizens' constitutional rights.

**COUNT II: VIOLATION OF THE 4th AMENDMENT RIGHT TO BE FREE FROM UNREASONABLE SEIZURE UNDER 42 U.S.C. § 1983 MRS. WITT AGAINST DEFENDANTS BROOKSIDE AND SELLERS**

44. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

45. This cause of action is brought against the Town of Brookside and against Defendant Sellers pursuant to 42 U.S.C. § 1983, Mrs. Witt's Fourth Amendment right to protection against unreasonable searches and seizures, and 42 U.S.C. 1988.

46. Mrs. Witt was a passenger in the private vehicle and a reasonable person in her position would not have felt free to leave the scene, thus the stop constituted a seizure of her under the Fourth Amendment under *Brendlin v. California*. 551 U.S. 249 (2007).

47. Mrs .Witt is entitled to recover for the traffic stop because it constituted an unconstitutional seizure under 42 U.S.C § 1983. Recovery under § 1983 requires two elements: that the challenged conduct was done under color of state law, and that it constitutes a deprivation of the plaintiffs' rights, privileges, or immunities.

48. Sellers was employed by the Brookside police force and working within the scope of his employment. The stop clearly occurred under color of state law.

49. The stop deprived Mrs. Witt of her constitutionally guaranteed Fourth Amendment right to be protected against unreasonable searches and seizures, because Sellers stopped the vehicle in which she was riding without reasonable suspicion or cause.

50. Sellers did not have the objective, reasonable suspicion of criminal activity as required by *Terry v. Ohio* to justify a traffic stop and thus a Fourth Amendment seizure. United States v. Perkins, 348 F.3d 965, 969 (11th Cir. 2003).

51. There was no probable cause or reasonable suspicion for Sellers' traffic stop of Pastor Witt. Pastor Witt violated no traffic law or ordinance and was displaying temporary tags on his new vehicle as required by state law. Plaintiffs challenge the pretextual reason given for the stop that there was a report of a stolen vehicle.

52. The unconstitutional stop was willful and malicious. Sellers provided no evidence of any traffic violation whatsoever to seize Pastor Witt's vehicle and person, and there was no probable cause that a crime had been committed as

evidenced by the fact that Sellers failed to issue so much as a citation. Further, Sellers' use of a racial epithet and the command to "stay out" of Brookside indicate a malicious hostility toward Pastor Witt.

53. Brookside is liable as a municipality under § 1983 and *Monell* (436 U.S. 658, 1978) because it has a demonstrated practice of stationing officers on or near I-22, outside of its municipal jurisdiction, to pursue alleged traffic violations that they are not authorized to pursue, and this traffic stop likely would not have occurred if not for that practice. ("Drivers question tickets written on and near I-22 by local police department," https://abc3340.com/news/abc-3340-news-iteam/drivers-question-tickets-on-and-near-i-22-issued-by-local-police-department).

**COUNT III: TORT OF FALSE IMPRISONMENT**

**PASTOR WITT AGAINST DEFENDANT SELLERS**

54. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

55. False imprisonment is the unlawful detention of a person by another for any length of time that deprives the person of their personal liberty. (Ala. Code § 6-5-170).

56. The detention of Pastor Witt by Sellers was made without probable cause and was thus unlawful.

57. For the duration of the traffic stop, Pastor Witt and Mrs. Witt were deprived of their liberty. No particular length of detention is necessary for a false imprisonment claim, and it not necessary that there be confinement in a jail or prison – any exercise or threat of force that compels a person to remain where they do not wish to remain is an imprisonment. Crutcher v. Wendy's of N. Ala., 857 So.2d 82, 92 (Ala. 2003).

58. The false imprisonment was willful and malicious. Sellers provided no evidence of any traffic violation whatsoever to seize Pastor Witt's vehicle and person, and there was no probable cause that a crime had been committed as evidenced by the fact that Sellers failed to issue so much as a citation. Further, Sellers' use of a racial epithet and the command to "stay out" of Brookside indicate a malicious hostility toward Pastor Witt.

**COUNT IV: TORT OF FALSE IMPRISONMENT**

**MRS. WITT AGAINST DEFENDANT SELLERS**

59. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

60. False imprisonment is the unlawful detention of a person by another for any length of time that deprives the person of their personal liberty. (Ala. Code § 6-5-170).

61. The detention of Mrs. Witt by Sellers was made without probable cause and was thus unlawful.

62. For the duration of the traffic stop, Pastor Witt and Mrs. Witt were deprived of their liberty. No particular length of detention is necessary for a false imprisonment claim, and it not necessary that there be confinement in a jail or prison – any exercise or threat of force that compels a person to remain where they do not wish to remain is an imprisonment. Crutcher v. Wendy's of N. Ala., 857 So.2d 82, 92 (Ala. 2003).

63. The false imprisonment was willful and malicious. Sellers provided no evidence of any traffic violation whatsoever to seize Pastor Witt's vehicle and person, and there was no probable cause that a crime had been committed as evidenced by the fact that Sellers failed to issue so much as a citation. Further, Sellers' use

of a racial epithet and the command to "stay out" of Brookside indicate a malicious hostility toward Pastor Witt.

## COUNT V: EQUAL PROTECTION VIOLATION IN VIOLATION OF PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983 PASTOR WITT AGAINST ALL DEFENDANTS

64. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

65. A § 1983 equal protection violation requires that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.

66. As alleged above, Pastor Witt questions the pretextual reason given for the traffic stop and alleges that were he and his wife not Black, the unlawful stop would not have occurred.

67. The use of the racial epithet alone is perhaps not a sufficient cause for an equal protection claim, but the harassing behavior of the unlawful stop itself as well as the warning to "stay out" of the city provide the necessary further step required. Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999).

68. Savelle is liable due to his suspected involvement with placing the plaintiffs' photos and improper charges on Crime Stoppers and on Facebook, which plaintiffs' allege would not have occurred had they not been Black.

69. Jones is liable due to his having signed off on the improper charges, which would not have been brought had Pastor Witt not been Black.

70. Brookside is liable due to Jones having final policymaking authority to decide whether charges are brought, and as such his decision to sign off on charges represent official city policy. Todd v. Kelley, 783 So. 2d 31, 40 (Ala. Civ. App. 2000).

## COUNT VI: EQUAL PROTECTION VIOLATION IN VIOLATION OF

## PLAINTIFFS' CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983

## MRS. WITT AGAINST SELLERS

71. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

72. A § 1983 equal protection violation requires that a state actor intentionally discriminated against the plaintiff because of membership in a protected class.

73. As alleged above, Mrs. Witt questions the pretextual reason given for the traffic stop and alleges that were he and his wife not Black, the unlawful stop would not have occurred.

74. The use of the racial epithet alone is perhaps not a sufficient cause for an equal protection claim, but the harassing behavior of the unlawful stop itself as well as the warning to "stay out" of the city provide the necessary further step required. Williams v. Bramer, 180 F.3d 699, 706 (5th Cir. 1999).

## COUNT VII: TORT OF OUTRAGE

## PASTOR WITT & MRS. WITT AGAINST DEFENDANT SELLERS

75. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

76. The tort of outrage requires that defendant's conduct be intentional or reckless, extreme and outrageous, and cause emotional distress so severe that no reasonable person could be expected to endure it.

77. Sellers' conduct against Pastor Witt and Mrs. Witt was intentional, from the making of the stop to the racist insult and warning that he gave as they parted.

78. Sellers' conduct was extreme and outrageous, both because no party should have to undergo an unlawful police stop, and because being racially insulted and warned to stay out of an entire municipality is beyond the pale particularly

from a police officer, a position requiring a far greater public trust than most. Woodley v. City of Jemison, 770 So. 2d 1093, 1096 (Ala. Civ. App. 1999).

79. Sellers' conduct caused emotional distress to plaintiffs, who should not need to feel trepidation simply because they are passing through or even near a certain public municipality.

## COUNT VIII: TORT OF MALICIOUS PROSECUTION
## PASTOR WITT AGAINST DEFENDANTS SELLERS, SAVELLE, AND JONES

80. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

81. Malicious prosecution requires that the defendant initiate a judicial proceeding with malice and without probable cause, that the proceeding terminates in favor of the plaintiff, and that the plaintiff suffer damages.

82. All individual defendants were involved with the initiation of the charges filed and warrant issued against Pastor Witt. These charges were filed with no probable cause to believe that plaintiffs had committed any crime, and were filed maliciously because Pastor Witt dared to speak up about his unfair treatment. The charges were presumably ratified by Jones as the chief.

83. The issuing of the warrant initiated the judicial proceeding.

84. Further, such actions were with malice and willful. This is evidenced by the fact that the felony arrest warrants were issued for Mr. Witt and his sister only after he complained about Sellers' inappropriate behavior, confirming the vindictiveness of his actions. Sellers' use of a racial slur, albeit before Pastor Witt's complaint to his supervisor, only corroborates Sellers' preconceived, malicious disposition towards Pastor Witt.

85. The charges ended in Pastor Witt and Ms. Witt's favor after being dropped.

86. Pastor Witt and Ms. Witt suffered damages: Pastor Witt was denied an employment opportunity as a pastor and his reputation at his current employment opportunity suffered, as well as his continued unease in or around the city of Brookside; Ms. Witt was emotionally harmed due to the potential, fortunately not forthcoming, deleterious effects on her employment and due to her fear of unjustified arrest after the event.

## COUNT IX: TORT OF MALICIOUS PROSECUTION

## MS. WITT AGAINST DEFENDANTS SELLERS, SAVELLE, AND JONES

87. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

88. Malicious prosecution requires that the defendant initiate a judicial proceeding with malice and without probable cause, that the proceeding terminates in favor of the plaintiff, and that the plaintiff suffer damages.

89. All individual defendants were involved with the initiation of the charges filed and warrant issued against Ms. Witt. These charges were filed with no probable cause to believe that Ms. Witt had committed any crime, and were filed maliciously because Pastor Witt had dared to speak up about the unfair treatment that they received. The charges were presumably ratified by Jones as the chief.

90. The issuing of the warrant initiated the judicial proceeding.

91. Further, such actions were with malice and willful. This is evidenced by the fact that the felony arrest warrants were issued for Mr. Witt and his sister only after he complained about Sellers' inappropriate behavior, confirming the vindictiveness of his actions. Sellers' use of a racial slur, albeit before Pastor

Witt's complaint to his supervisor, only corroborates Sellers' preconceived, malicious disposition towards Pastor Witt.

92. The charges ended in Pastor Witt and Ms. Witt's favor after being dropped.

93. Pastor Witt and Ms. Witt suffered damages: Pastor Witt was denied an employment opportunity as a pastor and his reputation at his current employment opportunity suffered, as well as his continued unease in or around the city of Brookside; Ms. Witt was emotionally harmed due to the potential, fortunately not forthcoming, deleterious effects on her employment and due to her fear of unjustified arrest after the event.

## COUNT X: TORT OF DEFAMATION

## PASTOR WITT AGAINST DEFENDANTS SAVELLE, JONES, AND BROOKSIDE

94. Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

95. The allegations and imputations of criminal conduct against Pastor Witt constitutes defamation, the elements of which are that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff.

96. Furthermore, these allegations constitute defamation *per se* because they are a false allegation of criminal conduct. Even if there was a warrant issued, the strong (and in this case false) implication of a police department alleging the existence of a warrant is that there existed probable cause for the issuing of that warrant.

97. Publication of the false allegations accompanied by Pastor Witt's picture on Facebook and Crimestoppers, publication that plaintiffs suspect to have been

committed by Savelle and signed off on by Jones, was a defamatory statement published not only to another, but to essentially the whole world.

98. Brookside is liable because the defamation was done by the city's police department and on the city police department's official Facebook page, and because posting the unsubstantiated allegations demonstrates a policy of failing to confirm necessary facts and truths before publicly defaming individuals.

99. Further, Defendants were aware the accusations were not true when publishing the information and acted beyond reckless disregard for the truth and beyond mere negligence, proving Defendants published these falsehoods to the public with actual malice.

## COUNT XI: TORT OF DEFAMATION

## MS. WITT AGAINST DEFENDANTS SAVELLE, JONES, AND BROOKSIDE

100.     Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

101.     The allegations and imputations of criminal conduct against Ms. Witt constitute defamation, the elements of which are that the defendant was at least negligent in publishing a false and defamatory statement to another concerning the plaintiff.

102.     Furthermore, these allegations constitute defamation *per se* because they are a false allegation of criminal conduct. Even if there was a warrant issued, the strong (and in this case false) implication of a police department alleging the existence of a warrant is that there existed probable cause for the issuing of that warrant.

103.     Defendants additionally should have known that, even had there been a
crime committed, Ms. Witt was not the correct person to publicly accuse, as she
had no connection to the traffic stop.

104.     Publication of the false allegations accompanied by Ms. Witt's picture
on Facebook and Crimestoppers, publication that plaintiffs suspect to have been
committed by Savelle and signed off on by Jones, was a defamatory statement
published not only to another, but to essentially the whole world.

105.     Brookside is liable because the defamation was done by the city's police
department and on the city police department's official Facebook page, and
because posting the unsubstantiated allegations demonstrates a policy of failing
to confirm necessary facts and truths before publicly defaming individuals.

106.     Further, Defendants were aware the accusations were not true when
publishing the information and acted beyond reckless disregard for the truth and
beyond mere negligence, proving Defendants published these falsehoods to the
public with actual malice.

## COUNT XII: DEFAMATION IN VIOLATION OF PLAINTIFFS'
## CONSTITUTIONAL RIGHTS UNDER 42 U.S.C. § 1983
## PASTOR WITT AGAINST DEFENDANTS SAVELLE, JONES, AND
## BROOKSIDE

107.     Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

108.     In addition to the allegations included in the above Count VIII for
defamation, Pastor Witt was also deprived of a liberty interest without due
process of law because he was denied private employment that he had otherwise
been certain to receive.

109.     Brookside is liable for the same reasons as given in Paragraph 105 and

due to a deliberately indifferent failure to train its officers to respect citizens'

constitutional rights.

## COUNT XIII: §1983 FAILURE TO TRAIN

## PASTOR WITT AGAINST DEFENDANTS JONES AND BROOKSIDE

110.     Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

111.     Throughout both the initial traffic stop and the subsequent events, the

actions of Brookside police officers Sellers and Savelle resulting in the

constitutional violations and deprivations in the above claims indicate severe

lapses in the training program of the department.

112.     Chief Jones and Brookside's deliberate indifference toward the

constitutional rights of people in or near their jurisdiction led to the violations

claimed above.

113.     This deliberate indifference is evidenced by Brookside Police

Department's common practice of making traffic stops in or near its police

jurisdiction that it does not have the authority to make.

114.     These unauthorized traffic stops, seizures of motorists' without required

probable cause to believe that a crime had been committed, represent a pattern

of constitutional violations continued by the stop of Pastor Witt and Mrs. Witt.

115.     Had the necessary training been performed, the unauthorized stop of

Pastor Witt and Mrs. Witt may not have occurred.

## COUNT XIV: §1983 FAILURE TO TRAIN

## MRS. WITT AGAINST DEFENDANTS JONES AND BROOKSIDE

116.     Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

117.     Throughout both the initial traffic stop and the subsequent events, the actions of Brookside police officers Sellers and Savelle resulting in the constitutional violations and deprivations in the above claims indicate severe lapses in the training program of the department.

118.     Chief Jones and Brookside's deliberate indifference toward the constitutional rights of people in or near their jurisdiction led to the violations claimed above.

119.     This deliberate indifference is evidenced by Brookside Police Department's common practice of making traffic stops in or near its police jurisdiction that it does not have the authority to make.

120.     These unauthorized traffic stops, seizures of motorists' without required probable cause to believe that a crime had been committed, represent a pattern of constitutional violations continued by the stop of Pastor Witt and Mrs. Witt.

121.     Had the necessary training been performed, the unauthorized stop of Pastor Witt and Mrs. Witt may not have occurred.

## COUNT XV: §1983 FAILURE TO TRAIN

## MS. WITT AGAINST DEFENDANTS JONES AND BROOKSIDE

122.     Plaintiffs incorporate paragraphs 1-34 of the Complaint by reference.

123.     Publicly identifying and accusing a person of criminal wrongdoing can have drastic consequences with regard to that person's life and livelihood.

124.     Even if the purported cause to arrest the two motorists involved in the traffic stop had been constitutional and correct, the public identification of Ms. Witt as someone who was wanted for a felony when she clearly was not one of the two people involved in the stop is a stunning investigatory failure.

125.    The drastic potential consequences of such a failure, noted in Paragraph

123 above, clearly indicate an obvious need to train individuals charged with

investigatory work to ensure they do not confuse one person for another and

incorrectly accuse somebody of a crime that they did not commit.

126.    The obvious need for training was not heeded by Chief Jones and

Brookside, resulting in the public identification of Ms. Witt as someone

suspected of a severe criminal offence.

127.    This single incident is enough to establish failure to train liability under

§ 1983. Keith v. DeKalb Cty., Ga., 749 F.3d 1034, 1052 (11th Cir. 2014); Martin

v. Wood, 648 F. App'x 911, 914-15 (11th Cir. 2016).


**RELIEF REQUESTED**

Wherefore, Plaintiffs respectfully pray that the Court will take jurisdiction of

this case and upon the final hearing grant the following relief:

a) appropriate actual and punitive damages for the violations of plaintiffs'

rights complained of herein,

b) the cost of this action, including reasonable attorney's fees; and

c) Any other relief to which Plaintiffs may be entitled.

**TRIAL BY JURY IS DEMANDED ON ALL APPLICABLE CLAIMS**


**Respectfully submitted this the 30th day of July, 2021,**


*/s/Richard A. Rice*
Richard A. Rice

THE RICE FIRM, LLC
N. 115 Richard Arrington Jr. Blvd.
Birmingham, AL 35203

Telephone 205 618-8733
rrice@rice-lawfirm.com

**ATTORNEY FOR PLAINTIFFS**

.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of July 2021, I have filed this document with the Clerk of Court using the CM-ECF filing system, which will provide electronic notification to all counsel of record.

Richard Warren Kinney , III
James W. Porter, II
PORTER, PORTER & HASSINGER, P.C.
880 Montclair Road, Suite 175
Birmingham, Alabama 35213
jwporterii@pphlaw.net
wkinney@pphlaw.net

*/s/Richard A. Rice*
Richard A. Rice