FILED
2021 Oct-15  PM 02:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **VINCENT L. WITT, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | Civil Action Number |
| **v.** | ) | **2:21-CV-00773-AKK** |
| | ) | |
| **TOWN OF BROOKSIDE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

This case began with a traffic stop of Vincent Witt ("Pastor Witt") and Brenda Witt ("Mrs. Witt") by a Town of Brookside police officer and the subsequent publication of photographs and information online by the police department claiming that Pastor Witt and his sister, Tareya Witt ("Ms. Witt"), who was not in the car during the traffic stop, were charged with and wanted for the felony of impersonating a police officer—charges that Pastor Witt and Ms. Witt deny and that were later dropped. Pastor Witt, Mrs. Witt, and Ms. Witt each plead federal and state claims against the Town and the three officers allegedly involved in these events. The defendants move to dismiss all of the claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* docs. 9–12. These motions are briefed, docs. 14–17, and ripe for review. As explained below, the motions are due to be granted except as to the following claims, which will proceed to discovery: Pastor

Witt's and Mrs. Witt's Fourteenth Amendment equal protection § 1983 claims against Officer Sellers, Pastor Witt's Fourteenth Amendment due process § 1983 claims for defamation against Officer Savelle and Officer Jones, Pastor Witt's state-law claims for malicious prosecution and defamation against Officer Savelle and Officer Jones, and Ms. Witt's state-law claims for malicious prosecution and defamation against Officer Savelle and Officer Jones.

## I.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

The Federal Rules of Civil Procedure also permit dismissal when a complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). This context-specific inquiry "requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.[1]

On June 12, 2019, Brookside Police Officer Marcus Sellers stopped Pastor Witt while he was driving on Interstate 22 with his wife, Brenda Witt. Doc. 7 at ¶¶ 12, 15. Officer Sellers told Pastor Witt that he stopped the vehicle "because [he] felt like it" and because the car had a temporary "paper tag." *Id.* ¶¶ 12, 16. Pastor Witt had purchased the vehicle about one week prior to the stop. *Id.* ¶ 12. Officer Sellers did not issue Pastor Witt a citation. *Id.* ¶ 19. However, Officer Sellers "degrade[d]

---

[1] The plaintiff's allegations are presumed true for purposes of Rule 12(b)(6). *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)). The facts are thus taken from the plaintiffs' amended complaint, doc. 7.

and harass[ed]" Pastor Witt by calling him a racist epithet and telling him to "[s]tay out of Brookside." *Id.*

The next day, Pastor Witt contacted the Town's police department and complained to an unknown officer about the incident. *Id.* ¶ 20. Officer James Sebastian "Bo" Savelle called Pastor Witt back the day after and asked to speak to "Officer Witt." *Id.* ¶ 21. Pastor Witt informed Officer Savelle "he was not an officer but the chaplain for the city of Lipscomb." *Id.* During one of these phone calls, Pastor Witt was told that Officer Sellers made the traffic stop due to a report of a stolen car that fit the description of his vehicle. *Id.* ¶ 22.

After Pastor Witt lodged his complaint, the Town issued warrants for his arrest and the arrest of his sister, Tareya Witt, for the felony of impersonating a police officer, *id.* ¶¶ 23–24, even though Ms. Witt had not been in the vehicle at the time of the stop, *id.* ¶¶ 15, 24. The Town's police department posted photographs of Pastor Witt and Ms. Witt on the department's Facebook page and on the website Crime Stoppers with captions that stated that the two individuals were wanted in Jefferson County on felony warrants for impersonating police officers. *Id.* ¶ 25. It was only after a member of Pastor Witt's church congregation showed Pastor Witt the Crime Stoppers images that Pastor Witt and Ms. Witt discovered the allegations against them. *Id.* ¶ 26.

Ms. Witt then contacted the Town's police department, and officers told her to come to the station and sign an affidavit swearing that either Pastor Witt or Mrs. Witt had used her name during the traffic stop. *Id.* ¶¶ 27, 30. Ms. Witt refused because she knew Pastor Witt and Mrs. Witt had not given her name to the police, and she believed officers would arrest her if she went to the station. *Id.* Ms. Witt also contacted Jefferson County Sheriff Mark Pettway, who immediately had the online posts with Ms. Witt's photograph removed. *Id.* ¶ 26. Eventually, Sheriff Pettway was able to do the same for Pastor Witt, and the warrants for Pastor Witt's and Ms. Witt's arrests were later dropped after Pastor Witt and Ms. Witt met with Sheriff Pettway. *Id.* ¶¶ 31, 34.

Pastor Witt alleges that, because his occupation "naturally requires maintaining a good reputation in the community," his present position was "compromised" when his parishioners learned of the criminal charges on Crime Stoppers. *Id.* ¶ 32. He further states that his "opportunity to advance his career and join another church with a larger congregation was rescinded due to the defamation suffered." *Id.* ¶ 33. Allegedly, if not for the charge against Pastor Witt, he would have "received an offer of employment from this church." *Id.* Pastor Witt also pleads that he suffered "shame, embarrassment, and humiliation of having his reputation subjected to false accusations." *Id.* ¶ 32. For her part, Ms. Witt alleges that, because she works for the federal government, she had to inform her managers

of the false charge against her. *Id.* ¶ 28. She also alleges that she "suffered anxiety over the uncertainty of whether she would in fact be arrested" and was therefore "unable to be at ease either at her home or while driving in the car." *Id.*

In addition, around this same time, Pastor Witt received a message from the police department's Facebook page. *Id.* ¶ 29. The message told Pastor Witt that he "had made public false claims of racism which is illegal," "[had] been charged appropriately and [would] have his day in court," "[would be] held accountable" for "slander[ing] false claims," and "[needed to] exercise [sic] racism from [his] life." *Id.*

## III.

The Witts raise federal and state claims against the Town; Officer Sellers; Officer Savelle; and the Town's then-chief of police, Officer Jones. Doc. 7. Pastor Witt pleads that the Town and Officer Sellers violated his Fourth Amendment rights (Count I); that Officer Sellers falsely imprisoned him (Count III); that the defendants violated his Fourteenth Amendment equal protection rights (Count V); that Officers Sellers, Savelle, and Jones maliciously prosecuted him (Count VIII);[2] that the Town and Officers Savelle and Jones defamed him under state law (Count X); that the Town and Officers Savelle and Jones defamed him in violation of his Fourteenth

---

[2] The plaintiffs abandoned their claim for the tort of outrage, Count VII. *See* docs. 7 at 13; 14 at 10.

Amendment due process rights (Count XII); and that the Town and Officer Jones failed to train officers with the police department in violation of 42 U.S.C. § 1983 (Count XIII).  *Id.*

Mrs. Witt pleads that the Town and Officer Sellers violated her Fourth Amendment rights (Count II), that Officer Sellers falsely imprisoned her (Count IV), that Officer Sellers violated her Fourteenth Amendment equal protection rights (Count VI), and that the Town and Officer Jones failed to train the police department in violation of 42 U.S.C. § 1983 (Count XIV).  *Id.*

Ms. Witt pleads that Officers Sellers, Savelle, and Jones maliciously prosecuted her (Count IX); that the Town and Officers Savelle and Jones defamed her under state law (Count XI); and that the Town and Officer Jones failed to train the police department in violation of 42 U.S.C. § 1983 (Count XV).  *Id.*

The defendants move to dismiss these claims.  *See* docs. 9–12.  Generally, all of the defendants contend that Officer Sellers had reasonable suspicion to stop Pastor Witt and Mrs. Witt due to the paper tag affixed to Pastor Witt's vehicle.  *See id.* They also argue that the online posts were both truthful and privileged.  *See id.*

The Town asserts that the plaintiffs do not plausibly allege a policy or custom that resulted in constitutional injuries, as required for the alleged Fourth or Fourteenth Amendment violations.  *See* doc. 9.  The Town also asserts it is immune

from liability for the state-law claims and that the plaintiffs have failed to comply with requirements under Alabama Code §§ 11-47-23 and 11-47-192. *See id.*

The individual officers each assert the doctrines of qualified immunity and state-agent immunity. *See* docs. 10–12. In addition, Officer Jones, the then-chief of the department, argues that the plaintiffs fail to plausibly allege more than a single incident of potentially unconstitutional conduct by his subordinates, and so the claims of supervisory liability must fail. *See* doc. 10.

Given the variety of claims and the multitude of parties involved, the court provides a brief roadmap of its analysis. First, the court addresses the federal claims, beginning with Pastor Witt's and Mrs. Witt's Fourth Amendment claims, which compose or underlie Counts I, II, XIII, and XIV. *Infra* § III.A. Then, the court addresses Pastor Witt's and Mrs. Witt's Fourteenth Amendment claims against all of the defendants (in Pastor Witt's case) and Officer Sellers (in Mrs. Witt's case), which compose or underlie Counts V, VI, and XII–XIV. *Infra* § III.B. In discussing these federal claims, the court addresses the failure-to-train claims predicated on the alleged constitutional injuries, including Ms. Witt's § 1983 failure-to-train claim against Officer Jones and the Town, Count XV. The court then shifts to the state claims: Pastor Witt's and Mrs. Witt's false imprisonment claims against Officer Sellers, Counts III and IV, *infra* § III.C; Pastor Witt's and Ms. Witt's malicious

8

prosecution claims, Counts VIII and IX, *infra* § III.D; and finally, Pastor Witt's and Ms. Witt's defamation claims, Counts X and XI, *infra* § III.E.

### A.

The defendants claim Officer Sellers had reasonable suspicion to stop Pastor Witt and Mrs. Witt.  Therefore, they contend that none of them are liable under § 1983 for the initiation of the traffic stop.  The court agrees.

### 1.

"Section 1983 provides a federal remedy for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws.'"  *Martin v. Wood*, 648 F. App'x 911, 913–14 (11th Cir. 2016) (citing 42 U.S.C. § 1983).  Pastor Witt and Mrs. Witt allege § 1983 claims for Fourth Amendment injuries against Officer Sellers, the Town, and Officer Jones as the supervisor of Officer Sellers.

The court begins with the § 1983 Fourth Amendment claims against Officer Sellers, who asserts his entitlement to qualified immunity.  "Qualified immunity shields public officials from suits against them in their individual capacities for torts committed while performing discretionary duties unless the tortious act violates a clearly established statutory or constitutional right."  *Zivojinovich v. Barner*, 525 F.3d 1059, 1071 (11th Cir. 2008).  The doctrine is designed to render immune from liability "all but the plainly incompetent or one who is knowingly violating the federal law."  *See Patel v. City of Madison*, 959 F.3d 1330, 1337 (11th Cir. 2020)

(internal quotation marks omitted).  Qualified immunity, a judge-made invention, thus prevents plaintiffs from holding officers accountable for misconduct unless the misconduct violates plaintiffs' "clearly established" rights.

To invoke the doctrine, an officer must first establish that he or she "act[ed] within the scope of his or her discretionary authority when the challenged action occurred."  *Id.*  "The term 'discretionary authority' 'include[s] all actions of a governmental official that (1) were undertaken pursuant to the performance of his duties, and (2) were within the scope of his authority.'"  *Id.* (finding officer acted within discretionary authority when he performed "takedown" of plaintiff "while on duty as a police officer conducting investigative functions").  Here, Officer Sellers engaged in investigative functions as an on-the-job officer when he effectuated the traffic stop, and so he acted within his discretionary authority.

The burden thus shifts to Pastor Witt and Mrs. Witt to sufficiently allege (1) a violation of their constitutional rights and (2) that these rights were "clearly established" at the time of the misconduct.  *See Perez v. Suszczynski*, 809 F.3d 1213, 1218 (11th Cir. 2016) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Though courts may consider these two factors in either order, the "traditional approach" instructs (but does not mandate) the court to begin with whether Pastor Witt's and Mrs. Witt's constitutional rights were violated under the Fourth

Amendment, as they allege.  *See Garczynski v. Bradshaw*, 573 F.3d 1158, 1166 (11th Cir. 2009); *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

a.

The Fourth Amendment protects individuals against unreasonable searches and seizures.  U.S. CONST. AMEND. IV.  Traffic stops undoubtedly constitute "seizures" under the Fourth Amendment.  *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003); *Delaware v. Prouse*, 440 U.S. 648, 653 (1979).  When an officer stops and "seizes" a vehicle, the officer also seizes the driver and any passengers.  *Prouse*, 440 U.S. at 653; *Brendlin v. California*, 551 U.S. 249, 255–56 (2007).  There is thus no doubt that Officer Sellers seized Pastor Witt and Mrs. Witt when he pulled them over.

"Because a routine traffic stop is only a limited form of seizure, it is more analogous to an investigative detention than a custodial arrest."  *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001) (citing *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984)).  The standard articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), governs the constitutionality of traffic stops.  *Id.*  Under *Terry*, an officer "can detain a motorist for a brief investigation when the officer has a 'reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity.'"  *United States v. Byron*, 817 F. App'x 753, 757 (11th Cir. 2020) (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)).

Reasonable suspicion requires at least a "minimal level of objective justification," *id.*, and the officer's actions must be reasonably related in both scope and duration to the circumstances that justified the stop and the time necessary to effectuate it, *Purcell*, 236 F.3d at 1277.  The court must "look at the totality of the circumstances of each case to see whether the detaining officer ha[d] a particularized and objective basis for suspecting legal wrongdoing."  *Perkins*, 348 F.3d at 970 (quoting *United States v. Arvizu*, 534 U.S. 266, 273 (2002)) (internal quotation marks omitted).  Applying these standards, for example, the Eleventh Circuit previously held that an officer had probable cause to stop a vehicle after watching the driver fail to signal while making a lane change, as required under state law. *United States v. Harris*, 526 F.3d 1334, 1338 (11th Cir. 2008).  Moreover, the Supreme Court has held that an officer's "subjective motivations for conducting a stop" do not bear on "the objective inquiry into whether the stop [was] reasonable under the Fourth Amendment."  *See Byron*, 817 F. App'x at 757 (quoting *United States v. Lewis*, 674 F.3d 1298, 1304 n.3 (11th Cir. 2012)); *Whren v. United States*, 517 U.S. 806, 812–13 (1996).

b.

Pastor Witt and Mrs. Witt contend that Officer Sellers stopped their vehicle without "the objective, reasonable suspicion of criminal activity as required by *Terry v. Ohio* to justify a traffic stop and thus a Fourth Amendment seizure."  Doc. 7 at

¶ 40 (citing *Perkins*, 348 F.3d at 969).  The Witts do not argue that Officer Sellers unjustifiably prolonged or exceeded the scope of the traffic stop but rather that Officer Sellers lacked the reasonable basis required to initiate the stop at all.  They allege Officer Sellers stopped Pastor Witt and Mrs. Witt "for having a paper tag on [Pastor Witt's] new black Cadillac vehicle, which he had purchased roughly a week prior" to the stop.  *Id.* ¶ 12.  They further allege that Officer Sellers told Pastor Witt that "[Officer Sellers] had stopped him 'because [he] felt like it' and because [Pastor Witt's] car had a paper tag," but Officer Sellers did not issue Pastor Witt a citation. *Id.* ¶¶ 16, 19.  Rather, Officer Sellers allegedly told Pastor Witt to "[s]tay out of Brookside" and called him a racist slur.  *Id.* ¶ 19.

This alleged conduct is reprehensible, and it harkens back to the dark period in our nation's history when officers blatantly displayed racist tendencies and weaponized their badges to keep minorities from certain communities under the guise of "law enforcement."  It was shameful then and more so now for law enforcement to continue to allegedly behave in this manner.  The court, however, can evaluate only the objective totality of the circumstances surrounding the stop to determine whether Officer Sellers had at least reasonable suspicion to effectuate it. *See Perkins*, 348 F.3d at 970.  Frustratingly, precedent does not permit the court to consider Officer Sellers' "subjective motivations" for pulling over Pastor Witt's vehicle in the court's Fourth Amendment analysis, however blatant Officer Sellers'

13

motivations may appear based on his alleged comments to Pastor Witt. *See Whren*, 517 U.S. at 812–13; *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004).

Relevant here, the parties agree that Pastor Witt drove a car that displayed a paper tag. Alabama law requires every motor vehicle operator driving on city streets or public highways to "at all times keep attached and plainly visible on the rear end of such motor vehicle a license tag or license plate as prescribed and furnished by the Department of Revenue at the time the owner or operator purchases his license." ALA. CODE § 32-6-51. A new owner of a motor vehicle has 20 days to purchase a license plate or transfer an existing license plate to the new vehicle. *United States v. Smith*, 164 F. App'x 825, 826 n.3 (11th Cir. 2006) (citing ALA. CODE § 40-12-260(a)(4)). In *Smith*, the Eleventh Circuit affirmed the district court's ruling that an officer had probable cause to stop a vehicle with a "paper car lot tag" in part because the vehicle lacked the license required by law and the officer sought to confirm the driver was within the 20-day grace period. *Id.* Working on the nighttime "burglary detail," the officer also noticed the vehicle was parked next to a closed office building at a complex experiencing "problems with vandalism and car burglary," and the officer "did not recognize the vehicle as belonging to a resident" of the complex. *Id.* at 827–28. The Circuit concluded that "the initial stop of the vehicle was based upon a potential traffic violation, as well as a reasonable suspicion that the occupants of the vehicle were involved in criminal activity." *Id.* at 828.

14

The court likewise concludes that, on the facts alleged, Officer Sellers had at least a reasonable basis to conduct a brief investigative stop of Pastor Witt's vehicle for the limited purpose of determining whether the paper dealership tag affixed to his car was legal under Alabama law.  *See id.*; *Harris*, 526 F.3d at 1338.  Moreover, the complaint does not insinuate that Officer Sellers extended the stop beyond the scope and duration necessary to make this assessment.  Again, precedent does not allow the court to inquire into Officer Sellers' subjective intentions, however apparent these intentions may be surmised from the racist comments he allegedly made.  Thus, Pastor Witt's and Mrs. Witt's Fourth Amendment rights were not violated by the traffic stop, and their Fourth Amendment § 1983 claims against Officer Sellers are due to be dismissed.

2.

Pastor Witt and Mrs. Witt also allege § 1983 claims against the Town and Officer Jones for failing to train officers within the police department, resulting in the allegedly unconstitutional traffic stop.  The court begins with the § 1983 claims against the Town before turning to the allegations against Officer Jones.

a.

The § 1983 claims against the Town cannot rest on Officer Sellers' traffic stop for the paper tag on Pastor Witt's vehicle.  Again, as discussed, because Officer

Sellers had reasonable suspicion to stop the car in order to validate its paper tag, the Town cannot be liable for a constitutional violation that did not occur.

Rather, to hold a municipality liable for a constitutional violation under § 1983, a plaintiff must establish that the officers committed a constitutional violation pursuant to a municipal "policy" or "custom." *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001). A plaintiff must "identify either (1) an officially promulgated [municipal] policy or (2) an unofficial custom or practice of the [municipality] shown through repeated acts of a final policy maker for the [municipality]." *Grech v. Clayton County*, 335 F.3d 1326, 1329 (11th Cir. 2003). And, relevant here, "the inadequacy of police training may serve as the basis for § 1983 liability" for municipalities "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Put another way, if a municipality's failure to train its police officers evidences a "deliberate indifference" to the rights of the municipality's residents, "[the] shortcoming [can] be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Id.* at 389. However, the plaintiff must identify a deficiency in the municipality's training program and connect the deficiency to the alleged constitutional violation. *See id.* at 391–92. "[A] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure

16

to train." *Vielma v. Gruler*, 808 F. App'x 872, 882 (11th Cir. 2020) (internal quotation marks omitted).

> Here, Pastor Witt and Mrs. Witt allege that the Town's police department has
>
> a regular custom, policy, and practice of stopping motorists on this section of I-22 on pretextual or disallowable bases in order to make money from motorists who may have neither the time nor the money to fight an improper ticket in court. This includes unauthorized stops for left lane driving purporting to be under the authority of Ala. Code § 32-5-77 as well as stops for alleged speeding violations outside of the city's municipal jurisdiction which the city is barred from making under Ala. Code § 32-5A-171(9).

Doc. 7 at ¶ 14; *see also id.* ¶¶ 43, 53.  Pastor Witt and Mrs. Witt add in support a news article from 2019 in which Alabama drivers complained of allegedly bogus tickets, especially for left-lane driving, issued by the Town's police officers who patrolled I-22 outside of the Town's municipal limits.  *See id.* ¶ 43.  To be sure, what Pastor Witt and Mrs. Witt reference, if true, reflects a common and exploitative practice among many resource-strapped municipalities, which often seek revenue from drivers passing through.[3]  But the practice Pastor Witt and Mrs. Witt cite is different from the conduct they allegedly experienced.  In particular, the complaint

---

[3] *See, e.g.*, *Fees, Fines, and the Funding of Public Services: A Curriculum for Reform*, Arthur Liman Ctr. for Pub. Interest Law at Yale Law School (Aug. 2020), https://digitalcommons.law.yale.edu/cgi/viewcontent.cgi?article=1026&context=amlaw (compiling research and scholarly articles regarding relationship between municipal revenue collection, traffic citations, and low-income residents, including in the rural South); Nick Sibilla, *Nearly 600 Towns Get 10% Of Their Budgets (Or More) From Court Fines*, Forbes (Aug. 29, 2019), https://www.forbes.com/sites/nicksibilla/2019/08/29/nearly-600-towns-get-10-of-their-budgets-or-more-from-court-fines (noting many municipalities that use fines to generate revenue "are closely clustered around highways or heavily rely on traffic tickets").

states that Officer Sellers stopped them outside of the Town's municipal jurisdiction but within its police jurisdiction due to the paper tag on their vehicle. The complaint does not state that Officer Sellers stopped Pastor Witt and Mrs. Witt due to a purported speeding violation, as would be unlawful under Alabama Code § 32-5A-171(9),[4] or for allegedly unlawful left-lane driving. *See* doc. 7 at ¶ 13. Pastor Witt and Mrs. Witt also do not plausibly plead that stopping a motorist to verify a paper dealership tag is unlawful when done outside of a city's municipal jurisdiction but within its police jurisdiction.[5] And though they argue that the stop lacked reasonable suspicion, Officer Sellers had the authority to stop their vehicle for the limited purpose of validating its tag. Therefore, the Town's alleged practice of pretextually stopping motorists to generate revenue, while predatory, does not align with the conduct alleged in the complaint. As pleaded, the complaint fails to state that the plaintiffs experienced a constitutional violation mirroring a pattern of unconstitutional conduct that would either constitute a policy or practice or put the Town on notice of the need to train its officers. Therefore, Pastor Witt's and Mrs.

---

[4] "Any speed limit set pursuant to this section shall be enforced by any municipality or any law enforcement officer of a municipality only within the corporate limits of the municipality and not within the police jurisdiction of the municipality." ALA. CODE § 32-5A-171(9).

[5] The complaint states that Officer Sellers "conducted a seizure outside of his jurisdiction, doing so without the proper authority and without any reasonable suspicion or probable cause." *Id.* ¶ 17. However, the plaintiffs do not provide additional information regarding Officer Sellers' alleged lack of authority to stop the vehicle for a paper tag outside of Brookside's municipal jurisdiction but inside its police jurisdiction.

Witt's Fourth Amendment § 1983 municipal-liability and failure-to-train claims against the Town are due to be dismissed.

b.

Pastor Witt and Mrs. Witt also plead § 1983 failure-to-train claims against Officer Jones for the alleged Fourth Amendment violations.[6]  A supervisor can be held liable under § 1983 for failing to train employees "where the failure amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Keith v. DeKalb Cty.*, 749 F.3d 1034, 1052 (11th Cir. 2014) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1397 (11th Cir. 1994)).  "To establish that [a] supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'" *Id.* (citing *Connick v. Thompson*, 563 U.S. 51, 58 (2011)).

However, as explained, Officer Sellers did have the authority to make the stop at issue, and so there was no Fourth Amendment violation with regard to the traffic stop.  And, though the plaintiffs allege Officer Jones permitted the Town's police

---

[6] Supervisory officials cannot be held liable under § 1983 for the unconstitutional acts of their subordinates on the basis of vicarious liability. *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999).  Instead, a plaintiff must show either the supervisor "personally participated" in the constitutional violation or that there is a "causal connection between the supervisor's actions and the constitutional violation." *Quinette v. Reed*, 805 F. App'x 696, 705 (11th Cir. 2020).  A causal connection is established by "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010).  Here, the plaintiffs do not allege facts showing that Officer Jones personally participated in Officer Sellers' stop or otherwise caused the alleged constitutional violation.

department's "common practice of making traffic stops in or near its police jurisdiction that it does not have authority to make," the facts pleaded do not amount to such a stop here.  Thus, the Fourth Amendment § 1983 failure-to-train claims against Officer Jones are also due to be dismissed.

### B.

The three plaintiffs also assert § 1983 claims on the basis of Fourteenth Amendment violations, including due process and equal protection violations, against all of the defendants.  Specifically, (1) Pastor Witt asserts that all of the defendants violated his equal protection rights (Count V) and that Officer Savelle, Officer Jones, and the Town defamed him in violation of his due process rights (Count XI); (2) Mrs. Witt pleads that Officer Sellers violated her equal protection rights (Count VI); and (3) Pastor Witt, Mrs. Witt, and Ms. Witt bring § 1983 failure-to-train claims against Officer Jones and the Town for the officers' Fourteenth Amendment violations (Counts XII–XIV)—Mrs. Witt for Officer Sellers' conduct at the traffic stop, Ms. Witt for the false charges and publication of the false charges, and Pastor Witt for both of these incidents.

### 1.

The court turns first to Pastor Witt's and Mrs. Witt's Fourteenth Amendment equal protection § 1983 claims against Officer Sellers for his conduct during the traffic stop.  Officer Sellers asserts his entitlement to qualified immunity.  Doc. 12

at 11.  Certainly, if the Witts' equal protection challenge were to the traffic stop itself, Officer Sellers would be correct because he was engaged in investigative functions when he effectuated the stop.  *See Patel*, 959 F.3d at 1337.  But the Witts' equal protection claim against Officer Sellers is based on Officer Sellers' conduct *during* the stop—namely, his alleged use of a racist epithet, coupled with a disgraceful warning to "stay out of Brookside," *see* doc. 7 at ¶¶ 67, 74—rather than the actual initiation of the stop itself.

An officer is not entitled to qualified immunity if the officer's action "is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg v. Paulk*, 611 F.3d 828, 838 (11th Cir. 2010) (internal quotation marks omitted).  Simply put, neither a uniform nor a badge can convert intolerable conduct into an exercise of "discretionary authority."[7]  Here, no reasonable officer, including Officer Sellers, could have believed that Officer Sellers behaved lawfully when he deployed bigotry in an attempt to intimidate and prevent two African American citizens from traveling through the Town.  In light of the obviously wrong conduct

---

[7] To establish that his actions were within his discretionary authority, Officer Sellers must show that "those actions were (1) undertaken pursuant to the performance of [his] duties, and (2) within the scope of [his] authority."  *Id.* (quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)).  Put another way, he must have been "performing a legitimate job-related function (that is, pursuing a job-related goal)" while using "means that were within [his] power to utilize." *Id.* (quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004)).  An officer's "bald assertion" is insufficient to meet this burden.  *Id.*

alleged, Officer Sellers' contention that he is entitled to qualified immunity is unavailing.

Although Officer Sellers is not entitled to qualified immunity, the court must still address whether the plaintiffs have pleaded a viable claim.  The Equal Protection Clause of the Fourteenth Amendment precludes a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. AMEND. XIV.  To state an equal protection violation, a plaintiff must "demonstrate that similarly situated persons outside his protected class were treated more favorably and that 'the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis.'"  *Watson v. Div. of Child Support Servs.*, 560 F. App'x 911, 913 (11th Cir. 2014) (quoting *Sweet v. Sec'y, Dep't of Corr.*, 467 F.3d 1311, 1318–19 (11th Cir. 2006)); *McCants v. City of Mobile*, 752 F. App'x 744, 750 (11th Cir. 2018).   "[T]he isolated use of a racial epithet, while deplorable, does not rise to the level of a constitutional violation"; however, the use of a racist slur "accompanied by other harassment or misconduct" will state an equal protection violation.  *See Brims v. Barlow*, 441 F. App'x 674, 678 (11th Cir. 2011); *Watson*, 560 F. App'x at 913–14.  Here, because Pastor Witt and Mrs. Witt allege equal protection violations on the basis of their race, they must plausibly allege that Officer Sellers treated similarly situated individuals outside their race more favorably or that he engaged in racist harassment

when he performed the traffic stop.  *McCants*, 752 F. App'x at 750; *Mahoney v. Owens*, 818 F. App'x 894, 899 (11th Cir. 2020).

Three cases are instructive.  In *McCants*, the Eleventh Circuit affirmed the dismissal of a § 1983 equal protection claim in which two African American drivers alleged that their race "was a motivating factor" in a police officer's decision to use excessive force against one of them, "[the officer's] attitude toward both of them was racially biased," and "[the officer's] attitude toward the white male driver was dramatically different."  752 F. App'x at 749–50.  One plaintiff, Greene, was involved in an automobile accident with Manning; the other plaintiff, McCants, witnessed the accident and stopped to check on Greene.  *Id.*  They alleged that the responding officer "laughed and chatted with Manning, the white male driver, but became very angry and screamed" at the plaintiffs before "punch[ing] McCants in the chest."  *Id.* at 747 (internal quotation marks omitted).

The Circuit held that the plaintiffs were unable to show the officer treated similarly situated people disparately through state action.  *Id.* at 750.  Specifically, Greene "[did] not allege that Officer Chandler failed to ask the white male driver for his license and insurance information although he requested it from her," and "there were no allegations that McCants, who was not involved in the accident, was similarly situated to the white male driver, who was involved in the accident."  *Id.* In addition, "[n]either plaintiff . . . offered any comments, statements, or facts from

23

which one could infer that Officer Chandler performed all these tasks with a racial animus." *Id.*

In *Watson*, the Circuit affirmed the dismissal of the plaintiff's equal protection claim against a Georgia Division of Child Support Services (DCSS) agent, noting the agent's "offensive or derogatory statements, even if racially tinged or racially motivated, [could] not violate equal protection guarantees unless they [were] so pervasive as to amount to racial harassment or [were] accompanied by some other conduct that deprive[d] a person of the equal protection of the laws." 560 F. App'x at 913–914 (citing *Williams v. Bramer*, 180 F.3d 699, 706 (5th Cir. 1999)). Watson alleged the DCSS agent discriminated against him by suggesting that African Americans should work in "inferior" jobs and insinuating that "all black men are the same." *Id.* at 912. The Circuit held that this discriminatory speech must have been accompanied by discriminatory conduct in order for Watson to state an equal protection violation. *Id.* at 914 (citing *Williams*, 180 F.3d at 706 ("[A]n officer's use of a racial epithet, without harassment or some other conduct that deprives the victim of established rights, does not amount to an equal protection violation.")).

Finally, in *Brims*, the Circuit affirmed the district court's grant of summary judgment to the defendants where the plaintiff, Brims, asserted an equal protection claim against an officer who used a racist epithet while arresting him. 441 F. App'x at 678. After Brims provided the officer, Barlow, with a letter from the Georgia

Department of Motor Vehicles demonstrating his car was validly registered, Barlow proceeded to "put his hands on [Brims] in an assaultive manner," pulled him out of the car, and used a racist slur before handcuffing him and performing a warrantless, non-consensual car search. *Id.* at 675. The Circuit held that Brims had not stated an equal protection claim because, accepting that "Barlow used a racial epithet, Brims ha[d] not established that Barlow engaged in any other misconduct." *Id.* at 678.

In this case, Pastor Witt and Mrs. Witt assert more than just that "were [they] not Black, the unlawful stop would not have occurred." Doc. 7 at ¶¶ 66, 73. In particular, they also challenge Officer Sellers' conduct during the stop as an equal protection violation. *Id.* ¶¶ 67, 74. Because they do not point to similarly situated motorists outside their race as comparators, the court assesses whether the allegations plausibly state that Officer Sellers behaved with racial animus that goes beyond discriminatory speech and shows additional discriminatory conduct on the basis of Pastor Witt's and Mrs. Witt's race. *See McCants*, 752 F. App'x at 750; *Watson*, 560 F. App'x at 913–914.

The plaintiffs agree with this framework and assert they have satisfied its requirements.[8] And indeed, Pastor Witt and Mrs. Witt assert conduct that, at this pleading stage, goes beyond the conduct alleged in *McCants*, *Watson*, and *Brims*.

---

[8] *See* doc. 7 at ¶¶ 67, 74 ("The use of the racial epithet alone is perhaps not a sufficient cause for an equal protection claim, but the harassing behavior of the unlawful stop itself as well as the warning to 'stay out' of the city provide the necessary further step required.").

Unlike the plaintiffs in *McCants*, the Witts plead "comments, statements, [and] facts from which one could infer that Officer [Sellers] performed [the traffic stop] with a racial animus." *See McCants*, 752 F. App'x at 750. Also, unlike the plaintiff in *Watson*, the Witts plead more than "just" the use of a racist slur—they also plead that Officer Sellers told them to "[s]tay out of Brookside," providing evidence of harassment. *See Watson*, 560 F. App'x at 914. And finally, unlike the plaintiff in *Brims*, the Witts not only allege further harassment, but this case is also at the motion-to-dismiss stage, not at summary judgment. *See Brims*, 441 F. App'x at 678.

Whether Pastor Witt and Mrs. Witt can ultimately prove their claims is a matter for another day. At this juncture, based on these allegations, they have pleaded sufficient facts to survive a motion to dismiss. Therefore, Pastor Witt and Mrs. Witt have stated Fourteenth Amendment equal protection § 1983 claims against Officer Sellers, and these claims are not due to be dismissed.

2.

Pastor Witt also pleads Fourteenth Amendment equal protection § 1983 claims against Officer Savelle, Officer Jones, and the Town in connection with the charge lodged against him and the publication of his photograph with the charge.

First, Pastor Witt asserts Officer Savelle "is liable due to his suspected involvement with placing the plaintiffs' photos and improper charges on Crime Stoppers and on Facebook," which "would not have occurred had [Pastor Witt and

Ms. Witt] not been Black."  Doc. 7 at ¶ 68.  Next, Pastor Witt alleges Officer Jones

"is liable due to his having signed off on the improper charges, which would not

have been brought had Pastor Witt not been Black."  *Id.* ¶ 69.  And finally, Pastor

Witt claims the Town "is liable due to [Officer] Jones having final policymaking

authority to decide whether charges are brought, and as such his decision to sign off

on charges represent official city policy."  *Id.* ¶ 70 (citing *Todd v. Kelley*, 783 So. 2d

31, 40 (Ala. Civ. App. 2000)).  The court begins with the crux of the issue: whether

bringing improper charges against Pastor Witt and/or posting his photograph, along

with the charges, on Crime Stoppers and Facebook—which Pastor Witt asserts

would not have occurred but for his race—constitute(s) an equal protection violation.

       As explained, a plaintiff can establish an equal protection violation by

plausibly alleging "that similarly situated persons outside his protected class were

treated more favorably and that 'the state engaged in invidious discrimination

against him based on race, religion, national origin, or some other constitutionally

protected basis.'"  *Watson*, 560 F. App'x at 913; *see also Mann v. Joseph*, 805 F.

App'x 779, 785 (11th Cir. 2020).  Here, although the plaintiffs assert the improper

charges "would not have been brought had Pastor Witt not been Black," *see* doc. 7

at ¶¶ 68–70, they do not identify similarly situated individuals who are outside their

race and who were treated more favorably by the Town's police officers.  The

defendants argue these allegations are thus insufficient to state an equal protection

claim, *see, e.g.*, doc. 11 at 4–5, and the plaintiffs do not appear to respond to this contention, focusing instead on the equal protection allegations against Officer Sellers.  In light of the foregoing, Pastor Witt's equal protection § 1983 claim against Officer Savelle is due to be dismissed because no equal protection violation has been plausibly alleged on the basis of the improper charges and online posts.

Moreover, as with the Fourth Amendment § 1983 claims, there can be no supervisory liability, municipal liability, or failure-to-train liability against Officer Jones or the Town without an underlying constitutional violation or pattern or policy of unconstitutional practices alleged.  *See Quinette*, 805 F. App'x at 705; *Connick*, 563 U.S. at 58; *Griffin*, 261 F.3d at 1307; *City of Canton*, 489 U.S. at 388.  Thus, Pastor Witt's Fourteenth Amendment equal protection § 1983 municipal-liability and failure-to-train claims against Officer Jones and the Town are also due to be dismissed.

3.

Pastor Witt also asserts that Officers Savelle and Jones and the Town defamed him in violation of his Fourteenth Amendment due process rights.  Specifically, Pastor Witt contends he was "deprived of a liberty interest without due process of law because he was denied private employment that he had otherwise been certain to receive" as a result of the publication of the charge against him.  Doc. 7 at ¶ 108.

a.

The court begins with Pastor Witt's due process § 1983 claims against Officers Savelle and Jones,[9] who assert they are entitled to qualified immunity.  As discussed, the two officers bear the initial burden of establishing they acted within their discretionary authority.  *See Estate of Cummings v. Davenport*, 906 F.3d 934, 940 (11th Cir. 2018).  To meet this burden, Officers Savelle and Jones must show that their actions "were (1) undertaken pursuant to the performance of [their] duties, and (2) within the scope of [their] authority."  *Id.* (quoting *Harbert Int'l*, 157 F.3d at 1282).  The officers must have been "performing a legitimate job-related function (that is, pursuing a job-related goal)" while using "means that were within [their] power to utilize."  *Id.* (quoting *Holloman*, 370 F.3d at 1265).  In assessing these claims, the court looks to state law to determine the scope of the officers' authority and "temporarily put[s] aside" the fact that the conduct "may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances."  *Id.*; *Harbert Int'l*, 157 F.3d at 1283; *Mikko v. City of Atlanta*, 857 F.3d 1136, 1144 (11th Cir. 2017).

---

[9] In the defendants' collective reply, Officer Jones contends that he is not liable for any of the § 1983 claims because the complaint "makes no plausible allegations that [he] was directly involved in anything that causally resulted in the Plaintiffs' claimed injuries."  Doc. 17 at 7. However, Pastor Witt specifically alleges that Officer Jones "signed off" on Officer Savelle's alleged posting of the Witts' photographs online and that Officer Jones was, at least during the relevant incidents, "in charge" of the department's "social media efforts."  Docs. 7 at ¶¶ 104, 108; 15 at 6.  Thus, Pastor Witt appears to allege that Officer Jones is liable directly, not solely as a supervisor or on a failure-to-train theory, for the alleged defamation.

But an officer's "bald assertion" that his or her actions were within his or her discretionary authority is insufficient. *Id.* And, as mentioned, an officer is not entitled to qualified immunity if the action "is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing." *Rehberg*, 611 F.3d at 838.

Given the above, and taking the facts alleged as true, the court concludes that Officers Savelle and Jones are not entitled to qualified immunity. The plaintiffs assert that the officers' alleged conduct—"attacking citizens on social media [and] issuing felony warrants in retaliation for constitutionally protected speech"—is not "protected discretionary authority." Doc. 15 at 9. Both of the affected plaintiffs deny impersonating a police officer; Pastor Witt in fact alleges he corrected Officer Savelle when Officer Savelle returned his call regarding the traffic stop with Officer Sellers. *See* doc. 7 at ¶ 21 ("Savelle asked for 'Officer Witt,' to which Pastor Witt informed him that he was not an officer but the chaplain for the city of Lipscomb."). And, allegedly, Ms. Witt was not even present at the traffic stop that led to the felony charges. *Id.* ¶ 15.

Neither the plaintiffs nor the defendants provide factual matter suggesting the officers had probable cause or even arguable probable cause[10] to issue the charges

---

[10] Arrests, and thus arrest warrants, require probable cause. *See Jones v. Cannon*, 174 F.3d 1271, 1283 (11th Cir. 1999). But an officer who makes an arrest lacking in probable cause is still entitled to qualified immunity "if there was arguable probable cause for the arrest." *Id.* Arguable probable

against these two plaintiffs for impersonation of a police officer.  Further still, the officers fail to support their "bald assertion[s]" that they acted within their discretionary authority with factual allegations showing they are actually entitled to immunity.  *See* docs. 10 at 9–12; 11 at 11–13.  Given the alleged and, truthfully, bizarre conduct—issuing and approving fabricated charges against Pastor Witt and Ms. Witt for impersonating police officers, without probable cause, and publicizing the charges on Facebook and Crime Stoppers in retaliation for Pastor Witt's complaint—the court is unconvinced that Officers Savelle and Jones are entitled to qualified immunity.

b.

The court thus turns to whether Pastor Witt plausibly alleges a due process violation by Officers Savelle and Jones based on his contention that he lost an employment opportunity as a result of the officers' defamatory conduct.  Under Supreme Court precedent, Pastor Witt's claim must satisfy the "stigma-plus" test, which states that defamatory speech *plus* an injury to recognized rights or interests or those provided by law can violate the Due Process Clause.[11]  *See Paul v. Davis*, 424 U.S. 693, 711 (1976).

---

cause exists "if a reasonable police officer, knowing what [the officer at issue] knew, could have believed there was probable cause for the warrantless arrest."  *Id.* (citing *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997), *cert. denied*, 525 U.S. 870 (1998)).

[11] "No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. CONST. AMEND. XIV.

In *Paul*, the Court held that the plaintiff could not bring a § 1983 claim for defamation based on police officers' distribution of flyers to local businesses publicizing mugshots and names of "active shoplifters," including the plaintiff, whose charges were later dropped.  424 U.S. at 695.  The due process claim

> [was] grounded upon his assertion that the flyer, and in particular the phrase 'Active Shoplifters' appearing at the head of the page upon which his name and photograph appear[ed], impermissibly deprived him of some 'liberty' protected by the Fourteenth Amendment. His complaint asserted that the 'active shoplifter' designation would inhibit him from entering business establishments for fear of being suspected of shoplifting and possibly apprehended, and would seriously impair his future employment opportunities.

*Id.* at 697.  Acknowledging "such consequences may [have] flow[ed] from the flyer in question," the Court remarked that the plaintiff "appear[ed] to state a classical claim for defamation action in the courts of virtually every State."  *Id.*  Yet the plaintiff had brought a Fourteenth Amendment claim, and the Court held that defamation, standing alone, does not violate federal due process rights without injury to tangible interests or rights previously recognized by law.  *See id.* at 710–11.

Similar to *Paul*, the instant case involves the publication of a criminal charge against Pastor Witt, with his name and photograph, before adjudication of a charge that was subsequently dropped.[12]  These online posts, like the flyers in *Paul*, were stigmatizing to Pastor Witt, as they labeled him as "wanted in Jefferson County" on

---

[12] Because only Pastor Witt, and not Ms. Witt, brings a Fourteenth Amendment due process § 1983 claim for defamation, the court discusses here only the conduct as it pertains to Pastor Witt.

a criminal charge for the felony of impersonating a police officer.  The question is whether Pastor Witt experienced the denial of a tangible interest or a right or status previously recognized and protected by law.  *See Paul*, 424 U.S. at 701; *Cannon v. City of W. Palm Beach*, 250 F.3d 1299, 1302 (11th Cir. 2001); *Behrens v. Regier*, 422 F.3d 1255, 1261 (11th Cir. 2005); *Smith v. Siegelman*, 322 F.3d 1290, 1296 (11th Cir. 2003).

The Court in *Paul* noted that precedent "[did] not establish the proposition that reputation alone, apart from some more tangible interests *such as employment*, is either 'liberty' or 'property' by itself sufficient to invoke the procedural protection of the Due Process Clause."  424 U.S. at 701 (emphasis added).  This language suggests that obstacles to continued employment, and especially discharge, constitute due process violations when paired with defamatory conduct by the government.  But a discharge is not strictly necessary.  Following *Paul*, the Eleventh Circuit has rejected, for example, a due process claim in which a plaintiff "ha[d] not contended that he was discharged, demoted, or rejected from a job" due to the stigma of his designation as a sexual abuser, *Smith*, 322 F.3d at 1297, and a due process claim in which a plaintiff did not allege "that he had suffered any loss of employment, any diminution of salary, or anything else that would in our view qualify as some more tangible interest, as required by *Paul*" following the issuance

of two Eleventh Circuit opinions criticizing his conduct as an attorney, *United States v. Sigma Int'l, Inc.*, 300 F.3d 1278, 1280 (11th Cir. 2002) (cleaned up).

Pastor Witt alleges that a specific employment opportunity with a different church, one that would have "advance[d] his career," was "rescinded" following Officers Savelle's and Jones' publication on Facebook and Crime Stoppers of charges that were never adjudicated and were later dropped. Doc. 7 at ¶ 33. Because Pastor Witt goes a step further than the plaintiffs in *Paul*, *Smith*, and *Sigma International* by pleading that he lost the specific chance "to join another church with a larger congregation" as a result of the defendants' stigmatizing posts, *id.* ¶ 33, the complaint plausibly states a Fourteenth Amendment due process violation. Thus, Pastor Witt's due process § 1983 claims against Officers Savelle and Jones individually are not due to be dismissed at this stage.

c.

The court turns to Pastor Witt's Fourteenth Amendment § 1983 claims against the Town and Officer Jones. These claims appear to be predicated on Pastor Witt's Fourteenth Amendment due process § 1983 claim. Read together, the claims seem to allege that but for the Town's "policy of failing to confirm necessary facts and truths before publicly defaming individuals," and but for the Town's and Officer Jones' "deliberate indifference toward the constitutional rights" of people traveling through the Town, the false charges and publication would not have occurred. *See*

34

*id.* ¶¶ 105–15.  The court addresses the claims against the Town and Officer Jones in turn.

i.

Pastor Witt's § 1983 claim against the Town is twofold.  First, Pastor Witt contends that the Town is liable "because the defamation was done by the city's police department and on the city police department's official Facebook page, and because posting the unsubstantiated allegations demonstrates a policy of failing to confirm necessary facts and truths before publicly defaming individuals."  *Id.* ¶ 105. Second, Pastor Witt claims the Town is liable "due to a deliberately indifferent failure to train its officers to respect citizens' constitutional rights."  *Id.* ¶ 109.  Pastor Witt thus alleges municipal liability—for the Town's alleged "policy of failing to confirm necessary facts and truths"—and failure-to-train liability.

Pastor Witt can establish the officers committed a constitutional violation pursuant to a Town "policy" or "custom," *Griffin*, 261 F.3d at 1307, by pleading facts to identify an official policy or an unofficial practice of the Town shown through repeated acts of a final policy maker for the Town, *Grech*, 335 F.3d at 1329. However, Pastor Witt fails to plausibly allege such a policy or practice with respect to "failing to confirm necessary facts and truths before publicly defaming individuals" on the Department's Facebook page.  *See* doc. 7 at ¶ 105.  Pastor Witt pleads only this specific instance in which allegedly improper charges were brought

against him and publicized.  He does not identify an official Town policy or a pattern of such acts, particularly by individuals in final policy-making positions for the Town.  The single instance alleged is insufficient to establish municipal liability. *Grech*, 335 F.3d at 1330 n.6.

A municipality can also be held liable for failures in police training "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  *City of Canton*, 489 U.S. at 388.  To establish this, an identified deficiency in the Town's training program must be connected to Pastor Witt's alleged constitutional injury.  *See id.* at 391–92.  However, Pastor Witt pleads only that the Town exhibited "a deliberately indifferent failure to train its officers to respect citizens' constitutional rights," doc. 7 at ¶ 109, and the court finds that this allegation, without more, is insufficient to establish failure-to-train liability. The due process § 1983 claims against the Town are due to be dismissed.

ii.

Pastor Witt also asserts a § 1983 failure-to-train claim against Officer Jones due to the alleged defamation.  *See* doc. 7 at ¶ 111.  But Pastor Witt does not allege a pattern of unconstitutional conduct such that Officer Jones was on actual or constructive notice of a failure in his officers' training resulting in the defamation. *See Keith*, 749 F.3d at 1052.  Rather, Pastor Witt only alleges facts supporting a

theory of individual § 1983 liability against Officer Jones on this basis.  Pastor Witt's § 1983 failure-to-train claim against Officer Jones is thus due to be dismissed.

4.

The court briefly addresses Ms. Witt's § 1983 failure-to-train claims against Officer Jones and the Town.  As explained, a supervisor or municipality is liable under § 1983 for failing to train employees "where the failure amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Keith*, 749 F.3d at 1052; *City of Canton*, 489 U.S. at 388.  To establish supervisory liability, "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary." *Keith*, 749 F.3d at 1052 (citing *Connick*, 563 U.S. at 58) (internal quotation marks omitted).  And to establish municipal liability, an identified deficiency in a municipality's training program must be connected to the alleged constitutional injury. *See City of Canton*, 489 U.S. at 391–92.

Ms. Witt, however, does not plead an underlying constitutional violation to support her § 1983 failure-to-train claim.  *See* doc. 7 at ¶¶ 122–27.  Moreover, Ms. Witt does not allege facts stating a pattern of unconstitutional conduct such that Officer Jones was on actual or constructive notice of a failure in his officers' training resulting in a constitutional violation. *See Keith*, 749 F.3d at 1052.  Rather, for her part, Ms. Witt alleges only state-law claims (malicious prosecution and defamation, Counts IX and XI, respectively), *id.* ¶¶ 87–93, 100–06, and a § 1983 failure-to-train

37

claim.  The court assumes that Ms. Witt's § 1983 failure-to-train claim is predicated on the Fourteenth Amendment, but without an alleged constitutional injury to Ms. Witt, the court cannot determine whether Ms. Witt plausibly states a § 1983 failure-to-train claim.  Therefore, Ms. Witt's failure-to-train claims against Officer Jones and the Town are due to be dismissed.

## C.

The court turns now to the state-law claims, beginning with Pastor Witt's and Mrs. Witt's contention that Officer Sellers falsely imprisoned them.[13]   Officer Sellers asserts his entitlement to state-agent immunity.

"Under Alabama law, '[s]tate-agent immunity protects state employees, as agents of the State, in the exercise of their judgment in executing their work responsibilities."  *Brown v. City of Huntsville*, 608 F.3d 724, 740 (11th Cir. 2010). To claim immunity, the officer must first demonstrate that the plaintiff's claims arise from a function that would entitle the officer to immunity.  *Id.*; *Ex parte Estate of Reynolds*, 946 So. 2d 450, 452 (Ala. 2006).  An officer is immune when the conduct alleged is based upon "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or

---

[13] "False imprisonment consists in the unlawful detention of the person of another for any length of time whereby he is deprived of his personal liberty."  ALA. CODE § 6-5-170.

attempting to arrest persons." *Ex parte Cranman*, 792 So. 2d 392, 405 (Ala. 2000).[14] If an officer establishes that the claims arise from the officer's discretionary functions, the burden shifts to the plaintiff to show that the officer acted willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law. *Brown*, 608 F.3d at 741 (citing *Estate of Reynolds*, 946 So. 2d at 452).

Here, Officer Sellers asserts that "performing traffic stops is a quintessential discretionary function." Doc. 12 at 8–9. He also argues that the court is not required to accept the plaintiffs' "conclusory allegations" that Officer Sellers acted willfully, maliciously, fraudulently, or in bad faith. *Id.* However, while Officer Sellers' conduct presumptively falls within the scope of his discretionary functions under *Cranman*, the plaintiffs indeed plead factual matter supporting their allegations of willfulness, maliciousness, or bad faith. The plaintiffs plainly allege that Officer Sellers used a racist epithet and told Pastor Witt and Mrs. Witt to "[s]tay out of Brookside," which "indicate[d] a malicious hostility toward Pastor Witt." Doc. 7 at ¶ 42. Therefore, Pastor Witt's and Mrs. Witt's false imprisonment claims against Officer Sellers are not due to be dismissed on state immunity grounds.

---

[14] *See also* ALA. CODE § 6-5-338(a) (police officers "shall have immunity from tort liability arising out of [their] conduct in performance of any discretionary function within the line and scope of [their] law enforcement duties"); *Brown*, 608 F.3d at 741 ("*Cranman*'s test for state-agent immunity governs whether law enforcement officers are entitled to statutory, discretionary-function immunity under § 6-5-338(a).").

However, false imprisonment requires an "unlawful detention," ALA. CODE § 6-5-170, and the complaint does not plausibly allege the stop was unlawful. As the parties agree,[15] Officer Sellers initiated the stop ostensibly after noticing the car's paper tag. *See, e.g.,* doc. 7 at ¶¶ 12, 16. The paper tag gave Officer Sellers a reasonable basis to temporarily detain the vehicle; the Witts do not cite authority demonstrating Officer Sellers was not permitted to perform the stop outside of the Town's corporate limits. The false imprisonment claims are thus due to be dismissed.

## D.

Pastor Witt and Ms. Witt also plead malicious prosecution claims against Officers Sellers, Savelle, and Jones. The defendants argue that they are entitled to state-agent immunity, *see, e.g.*, doc. 11 at 7, and that they never initiated "judicial proceedings" against the plaintiffs, *see, e.g.*, *id.* at 6.

---

[15] In response to Officer Sellers' motion, the plaintiffs assert that "[t]he defense avers that the stop was for [Pastor Witt's] vehicle having a 'paper tag,'" but this "ignores the allegation that [Officer Savelle] told Pastor Witt that the traffic stop was made because of a report of a stolen car bearing that description." Doc. 14 at 1. Though the plaintiffs argue that the paper tag was not the real reason Officer Sellers pulled the car over, they do not dispute that the car displayed a paper tag. Doc. 7 at ¶ 12. And the complaint alleges that during the stop, Officer Sellers told Pastor Witt he stopped them, in part, because the car had a paper tag. *Id.* ¶ 16. That Officer Sellers and/or Officer Savelle also believed the car was the subject of a stolen-car report, if true, does not contradict Officer Sellers' contention that the paper tag gave him the authority to stop the car.

1.

Officers are immune from civil liability under Alabama law where their alleged conduct is based on "exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons." *Cranman*, 792 So. 2d at 405; *Estate of Reynolds*, 946 So. 2d at 452.  In this case, because attempting to make an arrest constitutes a "discretionary function" under *Cranman*, the officers here have met their initial burden of establishing entitlement to state-agent immunity.  792 So. 2d at 405. However, officers lose this entitlement to state-agent immunity if the plaintiff plausibly alleges that the officer acted "willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law." *Id.*; *see also Brown*, 608 F.3d at 741.  And here, on the facts alleged, the plaintiffs have met their burden with respect to Officers Savelle and Jones, but not Sellers.

Pastor Witt and Ms. Witt allege that Officers Savelle and Jones each played a role in lodging, approving, and publicizing the allegedly false charges for impersonating police officers.  But though they claim that "[a]ll individual defendants were involved with the initiation of the charges filed and warrant[s] issued" against them, nowhere do the pleadings describe actions by Officer Sellers indicating he had a role in the charges, warrants, or online posts. *See* doc. 7 at ¶¶ 82, 89.  Rather, the plaintiffs assert that (1) only after Pastor Witt spoke with Officer

Savelle were the allegedly false warrants issued, *id.* ¶ 84; (2) they suspect the publication of the charges and photographs online "[was] committed by Savelle," *id.* ¶ 97; and (3) Officer Jones "signed off" on the actions that led to the charges and online posts, *id.*   They further assert that Officer Jones was "in charge of Brookside's . . . social media efforts," and that the officers "embarked on a social media campaign and obtained baseless arrest warrants" after Pastor Witt complained of Officer Sellers' behavior during the traffic stop.  Doc. 15 at 6.

Taken together, at this stage, the complaint plausibly alleges that Officers Savelle and Jones pursued and publicized charges against Pastor Witt and Ms. Witt willfully, maliciously, fraudulently, in bad faith, and/or beyond their authority, and so they are not entitled to claim state-agent immunity.  *See Cranman*, 792 So. 2d at 405; *Grider v. City of Auburn*, 618 F.3d 1240, 1259 (11th Cir. 2010) (where plaintiff's version of events showed lack of arguable probable cause and malice by officer, officer was not entitled to state-agent or discretionary-function immunity from malicious prosecution claim). The claims against Officer Sellers, however, do not evidence such conduct—or, potentially, any conduct—with respect to bringing and publicizing the allegedly improper charges.  The malicious prosecution claims against Officer Sellers are therefore due to be dismissed.

2.

Under Alabama law, malicious prosecution requires (1) a judicial proceeding or prosecution instituted or continued by the defendant, (2) lack of probable cause, (3) malice, (4) termination in the plaintiff's favor, and (5) injury or damage.  *Moon v. Pillion*, 2 So. 3d 842, 845 (Ala. 2008); *Heining v. Abernathy*, 295 So. 3d 1032, 1039 (Ala. 2019).  *See also Wood v. Kesler*, 323 F.3d 872, 881–82 (11th Cir. 2003) (listing elements of common-law malicious prosecution and noting "these are also the same elements required under Alabama law for the tort of malicious prosecution"); *Grider*, 618 F.3d at 1256.

Officers Savelle and Jones dispute that judicial proceedings were initiated against Pastor Witt and Ms. Witt.  In support, the officers cite Rule 2.1 of the Alabama Rules of Criminal Procedure, which states that "[a]ll criminal proceedings shall be commenced either by indictment or by complaint."  ALA. R. CRIM. P. 2.1.  They argue this "either/or" language excludes from the definition of "judicial proceeding" the bringing of criminal charges and arrest warrants.  *See, e.g.*, doc. 10 at 5.  The plaintiffs counter with § 15-3-7 of the Alabama Code, which states that "[a] prosecution may be commenced within the meaning of this chapter by finding an indictment, *the issuing of a warrant* or by binding over the offender."  ALA. CODE

§ 15-3-7 (emphasis added).[16]   It is true that many malicious prosecution cases involve the filing or continuing of ostensibly baseless lawsuits in Alabama courts, which Pastor Witt and Ms. Witt do not clearly allege.[17]   But the defendants do not cite to and the court has not located any cases expressly limiting a "malicious prosecution" claim only to those that involve proceedings in court.   On the contrary, the Eleventh Circuit has suggested a malicious prosecution claim can be more expansive than that.   *See Grider*, 618 F.3d at 1253.

In *Grider*, the Circuit remanded for trial a case in which the plaintiff filed a malicious prosecution claim against an officer for issuing a warrant against him without probable cause.   *Id.*   The officer allegedly signed an affidavit and issued an arrest warrant charging the plaintiff with bribery for trying to pay the officer not to

---

[16] As the defendants point out, this provision of the Alabama Code is nestled in a subsection regarding the time limitations within which a prosecution must be commenced for certain offenses. Doc. 17 at 5; *see, e.g.*, ALA. CODE § 15-3-5 (listing offenses that do not have time limitations on prosecution).   However, the defendants do not explain why this fact renders § 15-3-7 irrelevant to the question of whether the issuing of arrest warrants falls within the meaning of "malicious prosecution."   Doc. 17 at 5 ("What the Plaintiffs neglect to include in citing that Code section, however, is that any meaning ascribed to the commencement of a prosecution is limited to that chapter, which governs limitations periods for criminal violations. Thus, § 15-3-7 offers no support for the Plaintiffs' position that judicial proceedings were initiated against them, and they have still not shown even where any judicial proceedings were commenced in an Alabama court.").

[17] *See, e.g.*, *Delchamps, Inc. v. Bryant*, 738 So. 2d 824, 832 (Ala. 1999) ("judicial proceeding" element "undisputed" in malicious prosecution case where store continued to pursue case against alleged shoplifter despite potentially unassailable alibi); *Ford New Holland, Inc. v. Beaty*, 602 So. 2d 1198, 1199, 1202–03 (Ala. 1992) (reversing malicious prosecution determination because probable cause existed where defendant swore facts to clerk regarding physical altercation with plaintiff, leading to arrest warrant for assault for which plaintiff was found not guilty due to "razor-thin distinction" between "assault" and "harassment").

enforce an alcohol ordinance, despite the lack of evidence that the plaintiff had violated the ordinance. *Id.* at 1249–50. At a preliminary hearing, the Alabama trial court in the underlying criminal action dismissed the charge for lack of probable cause. *Id.* at 1250. The Circuit permitted the malicious prosecution claims to proceed to trial, finding that the district court properly denied the officer qualified immunity and Alabama state-law immunity. *Id.* at 1253. In so holding, the Circuit stated that "[t]he elements under Alabama law for the common-law tort of malicious prosecution are the same [as a § 1983 malicious prosecution claim], except that they require *only* a 'judicial proceeding[,]' not a 'criminal prosecution.'" *Id.* at 1256 (emphasis added).

*Grider* suggests that, under Alabama law, a plaintiff may pursue a malicious prosecution claim against an officer who brings a criminal charge or an arrest warrant against the plaintiff without probable cause.[18] The Circuit's language also suggests that the term "judicial proceeding" is not meant to exclude the initiation of criminal charges but, to the contrary, may include something *less* than a full criminal prosecution. Moreover, it defies logic to suggest that the conduct alleged in the instant case could not support a malicious prosecution claim solely because the

---

[18] *See also Williams v. City of Abbeville*, No. 1:12-CV-263-WKW, 2013 WL 1117297, at *9 (M.D. Ala. Mar. 18, 2013) (rejecting Alabama malicious prosecution claim where allegations established, "at most," that officers knew other officer coerced individual into making false statement implicating plaintiff in false crime, "not that they signed the criminal complaint in support of the arrest warrant").

charges and warrants were dropped before the plaintiffs stepped foot in an Alabama court—and after the plaintiffs went to considerable lengths to assert their innocence and have public announcements of the warrants taken down. Under the defendants' reasoning, private individuals or law enforcement officers could fabricate factual allegations underlying a criminal charge, use the fabricated information to seek an arrest warrant, and pursue an arrest, knowing the factual allegations were false but avoiding liability so long as law enforcement dropped the charges just before the court proceeding, no matter the damage that occurred in the interim. The law, as *Grider* and *Williams* note, does not support the defendants' position. Accordingly, Pastor Witt and Ms. Witt plausibly allege that Officers Savelle and Jones initiated "judicial proceedings" against them.

Elements two, four, and five also appear to be met on the facts alleged. Taking the plaintiffs' factual allegations as true, Pastor Witt and Ms. Witt did not impersonate police officers, doc. 7 at ¶¶ 21, 24, and so the officers lacked probable cause to issue charges or arrest them. *See Heining*, 295 So. 3d at 1039 ("probable cause" is "reasonable ground for suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense charged").[19] The prosecution terminated in Pastor Witt's and

---

[19] In fact, Ms. Witt alleges that she was not even present during the traffic stop involving Pastor Witt and Mrs. Witt and thus could not have engaged in conduct impersonating a police officer before the officers brought the charge against her. Doc. 7 at ¶ 24.

Ms. Witt's favors when Sheriff Pettway later had the warrants dropped.  *Id.* ¶¶ 31,

34.  And Pastor Witt and Ms. Witt assert "damage" due to the malicious prosecution:

for Pastor Witt, "shame, embarrassment, and humiliation"; reputational harm; and

the loss of a specific career opportunity at a larger church; and for Ms. Witt, "anxiety

over the uncertainty of whether she would in fact be arrested."  *Id.* ¶¶ 28, 32–33; *cf.*

*Delchamps*, 738 So. 2d at 835 (discussing damages related to "mental anguish" and

reputational injury in malicious prosecution).

Given the above, the only remaining element at issue is malice.  *See*

*Delchamps*, 738 So. 2d at 832.  "When no other reasonable explanation exists for the

conduct of the defendant, malice may be inferred."  *Id.* at 833.  The defendant can

defeat this inference by demonstrating good faith.  *See id.* at 833–34.  The officers

here provide no reasonable explanation for their charging and issuing of arrest

warrants against Pastor Witt and Ms. Witt for impersonating police officers.  Under

the plaintiffs' version of events, Pastor Witt and Mrs. Witt were stopped for a paper

tag; they left after receiving no citation; Pastor Witt called later to complain about

Officer Sellers' conduct during the stop; and Pastor Witt and his sister, who was not

even in the car, subsequently learned that felony charges had been brought against

them for impersonating police officers when their images were posted online.  *See*

doc. 7.  The court is left with no reasonable explanation for the officers' strange and

harmful conduct.  Pastor Witt and Ms. Witt have plausibly alleged malice, and their malicious prosecution claims against Officers Savelle and Jones can proceed.

E.

The court turns finally to Pastor Witt's and Ms. Witt's defamation claims against the Town, Officer Savelle, and Officer Jones.

1.

The Town contends that it cannot be liable for Officers Savelle's and Jones' intentional conduct.  Under Alabama law, a municipality may be liable for injuries resulting from the neglectful, careless, or unskillful conduct of its officers under the doctrine of respondeat superior.  ALA. CODE § 11-47-190; *City of Lanett v. Tomlinson*, 659 So. 2d 68, 70 (Ala. 1995).  However, no liability exists for intentional torts, including actions carried out in bad faith or with malice or wantonness.  *See Ex parte Harris*, 216 So. 3d 1201, 1216 (Ala. 2016) (citing *Ex parte City of Tuskegee*, 932 So. 2d 895, 910 (Ala. 2005); *Cremeens v. City of Montgomery*, 779 So. 2d 1190, 1201 (Ala. 2000)).

Here, the complaint alleges that the officers "were aware the accusations were not true when publishing the information and acted beyond reckless disregard for the truth and beyond mere negligence, proving [they] published these falsehoods to the public with actual malice."  Doc. 7 at ¶ 99.  Though in other places and filings the plaintiffs also state that the officers' actions "[were] at least negligent," *see id.*

48

¶ 95; doc. 16 at 5, the crux of their allegations is that the officers knowingly and maliciously filed false charges against Pastor Witt and Ms. Witt and engaged in "widespread publication of defamatory information and personal photos of innocent individuals, one of whom had no contact with Brookside whatsoever," docs. 7 at ¶¶ 96–99; 16 at 5.  Because the pleadings indicate that the officers' conduct was intentional, the state-law defamation claims against the Town are due to be dismissed under Alabama Code § 11-47-190.

## 2.

In response to the state-law defamation claims, Officers Savelle and Jones contend they are entitled to state-agent immunity, *see* docs. 10 at 10; 11 at 11, and that the publication of the charges cannot constitute defamation because the statements publicized were truthful and privileged under Alabama Code § 13A-11-161, *see* docs. 10 at 8–9; 11 at 10–11.  The court disagrees on both fronts.

### a.

Officers Savelle and Jones presumptively acted within their discretionary authority when they pursued charges and sought to arrest Pastor Witt and Ms. Witt for impersonating police officers.  *See Cranman*, 792 So. 2d at 405.  The burden thus shifts to Pastor Witt and Ms. Witt to demonstrate that the officers acted "willfully, maliciously, fraudulently, in bad faith, beyond [their] authority, or under a mistaken interpretation of the law."  *Id.*; *see also Brown*, 608 F.3d at 741.

49

For the same reasons outlined with regard to the malicious prosecution claim, Pastor Witt and Ms. Witt have met their burden.   Officers Savelle and Jones allegedly played roles in lodging, approving, and publicizing false charges, knowing the charges lacked a factual basis, and retaliated against Pastor Witt.[20]   At this stage, the complaint plausibly alleges that Officers Savelle and Jones acted willfully, maliciously, fraudulently, in bad faith, and/or beyond their authority, and they are not entitled to state-agent immunity.   *See Cranman*, 792 So. 2d at 405.

b.

Under Alabama law, defamation requires (1) a "false and defamatory" statement about the plaintiff, (2) an "unprivileged communication" of the statement to a third party, (3) "fault amounting at least to negligence on the part of the defendant," and (4) either "actionality of the statement irrespective of special harm" or "the existence of special harm caused by the publication of the statement." *McCaig v. Talladega Pub. Co., Inc.*, 544 So. 2d 875, 877 (Ala. 1989).   The officers here claim that the published statements were truthful and privileged.

"Truth is an absolute defense to defamation."   *Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1289 (Ala. 1993) (quoting *Liberty Loan Corp. of*

---

[20] As mentioned, Pastor Witt and Ms. Witt assert that (1) after Pastor Witt spoke with Officer Savelle, the warrants were issued, doc. 7 at ¶ 84; (2) they suspect the publication of the charges and their photographs "[was] committed by Savelle," *id.* ¶ 97; and (3) Officer Jones "signed off" on the actions that led to the charges and posts, *id.*   Allegedly, Officer Jones was "in charge of Brookside's . . . social media efforts," and the officers "embarked on a social media campaign and obtained baseless arrest warrants" after Pastor Witt complained.  Doc. 25 at 6.

*Gadsden v. Mizell*, 410 So. 2d 45, 49 (Ala. 1982)).  While the defendants "ultimately bear[] the burden of showing that the defamatory words [were] true," the plaintiffs "[bear] the initial burden of showing a false communication."  *Crutcher v. Wendy's of North Ala., Inc.*, 857 So. 2d 82, 95 (Ala. 2003).  Here, Pastor Witt and Ms. Witt do not dispute that they were charged with felonies for impersonating police officers, leading to the warrants for their arrest.  Doc. 7 at ¶¶ 23–24.  But they deny that they engaged in conduct that gave the officers probable cause to seek the charges and warrants.  *See id.*  Allegedly, the officers fabricated the charges in response to Pastor Witt's complaint, and then the officers publicized the charges—which they knew to be false—using Facebook and Crime Stoppers.  *See id.* ¶ 25.

The defendants' argument that the Facebook and Crime Stoppers posts cannot be defamatory because they truthfully report the *existence* of the arrest warrants is well-taken at first blush.  Yet their argument would lead to illogical results.  It would permit officers to invent false charges, which would support the issuance of actual arrest warrants, and then escape liability for defamation because a publication *that they created*, asserting that arrest warrants were indeed issued, would be technically true.  Accordingly, at this pleading stage, Pastor Witt and Ms. Witt have plausibly alleged that a "false communication" occurred, and the officers have not met their burden of showing the communications were truthful.

In addition, Alabama law provides that "[t]he publication of a fair and impartial report of . . . the issuance of any warrant . . . shall be privileged, unless it be proved that the same was published with actual malice[.]" ALA. CODE § 13-A-11-161; *see Wiggins v. Mallard*, 905 So. 2d 776, 782 (Ala. 2004) ("§ 13A-11-161 is an 'explicit statutory privilege protecting fair and accurate reports of criminal charges and official investigations'") (citing *Wilson v. Birmingham Post Co.*, 482 So. 2d 1209, 1211 (Ala. 1986)). "[T]he application of the privilege turns on whether the alleged defamatory statement was an *accurate*, or 'substantially accurate,' publication of the [warrant]." *Wiggins*, 905 So. 2d at 783 (internal citations omitted) (emphasis in original). Moreover, a private individual can defeat the privilege by showing that "the communication was made with actual or common law malice (shown by evidence of previous ill will, hostility, threats, other actions, former libels or slanders, and the like, emanating from the defendant, or by the violence of the defendant's language, the mode and extent of the publication, and the like)." *Wilson*, 482 So. 2d at 1213. Common-law malice may be shown "by proof of 'the recklessness of the publication and prior information regarding its falsity." *Wiggins*, 905 So. 2d at 788.

The complaint here plausibly alleges that the officers, who filed purportedly false charges against Pastor Witt and Ms. Witt for impersonating police officers, publicized the existence of the charges to third parties through the internet with the

awareness that their factual support was wanting, at best, and completely fabricated, at worst. *See* doc. 7 at ¶¶ 99, 106.  The plaintiffs have plausibly alleged that Officers Savelle and Jones acted with malice.  This, in turn, renders the publication of the charges unprivileged.

The plaintiffs further allege that the statements were defamatory, in that they suggested criminal wrongdoing;[21] were made with at least negligence (actual or common-law malice); and caused damage in the form of anxiety (for Ms. Witt), harm to a specific employment opportunity (for Pastor Witt), and reputational harm and embarrassment (for both).[22] *See id.* ¶¶ 28, 32–34, 99, 106.  The defendants make no arguments to rebut these contentions.  Thus, Pastor Witt's and Ms. Witt's state-law defamation claims against Officers Savelle and Jones are not due to be dismissed.

## IV.

To close, officers with the Brookside Police Department allegedly subjected Pastor Witt and Mrs. Witt first to racist, reprehensible conduct during a traffic stop before lodging fabricated charges against Pastor Witt and his sister, Ms. Witt, in

---

[21] "Generally, any false and malicious publication, when expressed in printing or writing, or by signs or pictures, is a libel [if it] . . . charges an offense punishable by indictment or . . . tends to bring an individual into public hatred, contempt or ridicule or charges an act odious and disgraceful in society." *Drill Parts & Serv. Co.*, 619 So. 2d at 1289 (quoting *McGraw v. Thomason*, 93 So. 2d 741, 744 (Ala. 1957)).

[22] Falsely imputing the commission of a felony—here, impersonating a police officer—may constitute defamation per se, entitling the plaintiffs to presumed damages. *See Drill Parts & Serv. Co.*, 619 So. 2d at 1289 (citing *Nelson v. Lapeyrouse Grain Corp.*, 534 So. 2d 1085, 1091 (Ala. 1988)).

apparent retaliation for Pastor Witt's complaint.   Given the clarity of the wrongfulness of this conduct, qualified immunity will not operate as "an absolute shield for law enforcement officers" in this case.   *See Kisela v. Hughes*, 138 S. Ct. 1148, 1162 (2018) (Sotomayor, J., dissenting).

As explained above, Pastor Witt's and Mrs. Witt's Fourteenth Amendment equal protection § 1983 claims against Officer Sellers, Pastor Witt's Fourteenth Amendment due process § 1983 claims against Officer Savelle and Officer Jones, and Pastor Witt's and Ms. Witt's state-law claims for malicious prosecution and defamation against Officer Savelle and Officer Jones are not due to be dismissed. Thus, as to those claims, Officer Sellers', Officer Savelle's, and Officer Jones' motions, docs. 10–12, are due to be denied.

However, the officers' motions to dismiss are due to be granted as to the § 1983 claims predicated on alleged Fourth Amendment violations, the § 1983 claims predicated on alleged Fourteenth Amendment equal protection violations against Officer Savelle and Officer Jones, the § 1983 supervisory and failure-to-train claims against Officer Jones, and the malicious prosecution claims against Officer Sellers.   In addition, the Town's motion to dismiss, doc. 9, is due to be granted in full.   The Order in accordance with this Memorandum Opinion follows.

**DONE** the 15th day of October, 2021.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE